[No. 10147.    Department Two.    October 5, 1912.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v.
RUDOLPH WADEKAMPER, *Respondent*.[1]

EVIDENCE—JUDICIAL NOTICE—ACT OF CONGRESS.  Upon an issue
as to the title of the Northern Pacific right of way, the courts will
take judicial notice of the Act of Congress of July 2, 1864, granting
a right of way to the company over public lands.

PUBLIC LANDS—GRANT TO RAILROAD—RIGHT OF WAY—NATURE—
RELATION.  Act of Congress of July 2, 1864, granting a right of way
to the Northern Pacific Railroad Company over public lands is a
grant *in praesenti*, taking effect by relation as of that date, upon
definite location of the line, as against settlers acquiring public
lands after the grant and before the location of the line.

STIPULATIONS—CONSTRUCTION—PUBLIC LANDS—RAILROAD GRANT—
DEFINITE LOCATION OF LINE—PROOF.  A stipulation that the date of
the "definite location" of the Northern Pacific Railroad Company
was in 1884, implies a compliance with all the conditions precedent
to a valid definite location, and dispenses with proof (1) that the
company located the line, (2) gave notice to the land department,
and (3) that the selection was approved.

SAME.  In a stipulation relating to the Northern Pacific right of
way, the use of the word "railway" for "railroad" is immaterial,
where it was stipulated that the Northern Pacific Railway Company
was the successor of the Northern Pacific Railroad Company.

RAILROADS—RIGHT OF WAY—ADVERSE POSSESSION—EVIDENCE—SUF-
FICIENCY.  Actual possession of a railroad right of way for use as
a railroad and telephone line is sufficiently shown by the testimony
of a construction foreman of telegraphs that the railroad and tele-
graph line had been located as at present since 1887, crossing the
land in question, and that the telegraph line is about forty feet
from the center of the main track.

RAILROADS —TRESPASS — INJUNCTION—TITLE AND POSSESSION OF
PLAINTIFF—THREATS—EVIDENCE—SUFFICIENCY.  Injunction will lie
to prevent trespass and protect possession of a railroad right of
way actually used and in possession of the company under a claim of
title, where the adjoining owner had notified plaintiff's telegraph
construction foreman to keep off his land, and just prior to the
suit had told an employee of a telegraph company, licensed by the

[1]Reported in 126 Pac. 909.

plaintiff, not to trespass on his land, and that it would not be safe for him to go there and erect wire, the defendant's objections being made to work on the plaintiff's right of way.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered October 3, 1911, in favor of the defendant, after a trial before the court, dismissing an action to enjoin a trespass. Reversed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte* (*Englehart & Rigg,* of counsel), for appellant.

*H. J. Snively* and *I. J. Bounds,* for respondent.

ELLIS, J.—In this action plaintiff, Northern Pacific Railway Company, sought a preliminary and final injunction against an alleged trespass by the defendant upon its right of way and threatened interference with the telegraph line located thereon. The complaint alleged, that the Northern Pacific Railroad Company was incorporated by act of Congress, July 2, 1864, with power to build and operate a railroad and telegraph line from Lake Superior to Portland, Oregon, with a branch line to Puget Sound, and by the act was granted a right of way over the public lands of the United States; that pursuant to the act, the railroad company, in 1884, constructed a railroad and telegraph line across the north half of the southeast quarter and the northeast quarter of section 6, township 12, north, range 19, E., W. M., in Yakima county, and thereby became entitled to a right of way four hundred feet wide across that land as provided by the act; that the plaintiff is the successor and grantee of the Northern Pacific Railroad Company and owns the railroad and telegraph line, and that the railroad company and its successor, the railway company, ever since 1884 have been in possession of the right of way, paid taxes thereon, and used the same openly, continuously, and adversely to all persons; that on or about August 20, 1910, the defendant trespassed upon the right of way across the

above described land, and hindered and prevented the employees of the Western Union Telegraph Company in the use of the right of way and the stringing of wires on the telegraph poles thereon, which was being done with the plaintiff's consent and license; that the telegraph line is necessary to the operation of the railroad, and is for the joint use of the telegraph company and the plaintiff. The prayer was for a temporary restraining order, and that the same be made permanent upon final hearing. A temporary restraining order was issued, and the defendant failing to make return to a citation to show cause to the contrary, the order was continued in effect pending suit.

The defendant filed an answer, admitting the plaintiff's organization and capacity to sue, admitting the organization of the Northern Pacific Railroad Company, and the grant of a right of way over public lands of the United States, but denying the other allegations of the complaint. For a first affirmative defense the answer alleged that, "at the time the Northern Pacific Railway was located over the lands described in the complaint, the same were not public lands of the United States, but had passed from the United States to the owners, defendant's predecessors in interest, and that the Northern Pacific Railway Company never acquired any right in said land in virtue of said act of Congress." Adverse possession since the year 1871 was set up as a second affirmative defense. These affirmative matters were traversed by the reply. Trial was had to the court. The plaintiff introduced its evidence. The defendant challenged its sufficiency and offered no evidence. The court rendered judgment, dismissing the action at plaintiff's costs, and dissolving the restraining order. The plaintiff has appealed.

The evidence consisted of a stipulation of the parties, certain documentary evidence, and the testimony of witnesses. The stipulation is as follows:

"It is hereby stipulated that the Northern Pacific Railway Company is the successor and assignee of the Northern Pacific Railroad Company, a corporation created by act of Congress dated the second day of July, 1864, and that the Northern Pacific Railroad Company, by deed dated August 18th, 1896, transferred and conveyed to the Northern Pacific Railway Company its railroad, telegraph line, right of way and franchises and all its rights and privileges acquired under and by virtue of said act of Congress July 2nd, 1864, and the construction and equipment of said railroad in accordance with the terms of said act, and that said Northern Pacific Railway Company is now the owner of the same, subject, of course, to such rights as defendant may have in and to the land in controversy.

"It is further stipulated that R. Wadekamper is the grantee and successor of the entrymen and patentees of the United States in and to the lands in controversy, and has and owns all of the interest therein which may have been owned by said patentees and entrymen, as shown by certified copy of a certain letter dated May 9th, 1911, from the department of the interior to Britton & Gray, and as shown by the tract books of record in the United States Land Office at North Yakima, Washington, copies whereof are hereto attached.

"It is further stipulated and agreed that the date of the definite location of right of way and construction of the railroad of the Northern Pacific Railway Company through the premises in controversy herein was in the spring of the year 1884."

From the letter to Britton & Gray, referred to in the stipulation, which letter is in evidence, and from certified extracts from the tract books of the United States land office at North Yakima, also in evidence, it appears that there was no claim to, or entry filed upon, the land described in the complaint, until the year 1871. The construction foreman of telegraphs for the Northern Pacific Railway Company testified, that he had been in the service of that company since 1887, was familiar with the railroad and telegraph line of the railroad company across the land in question, and that it had been located as at present ever since the year 1887;

that since 1887 the telegraph line has been used by the
Northern Pacific company for train dispatching and commercial purposes, the line extending from Portland to St.
Paul; that this is the only telegraph line the company ever
built; that as at first constructed there were four wires,
which have since been added to from time to time until there
are now seventeen; that the witness had strung four wires in
the past five years; that about fourteen years ago the telegraph poles were renewed and the line rebuilt on the same
ground, and the witness never heard of any objection being
made thereto; that the telegraph poles are about forty feet
from the center of the main railroad track actually in use,
and that the main track has been in its present location ever
since the witness can remember; that he knew of no change
ever having been made in its location.

The witness testified that, on one occasion when he was
stringing wires for the Northern Pacific Railway Company,
the defendant forbade him from going on the land, but that
he paid no attention thereto; that he knew that employees of
the Western Union Telegraph Company were putting up the
wires in August, 1910, about which complaint is made, and
that the work was being done with his knowledge and consent.
The district line supervisor for the Western Union Telegraph
Company testified that he was familiar with the telegraph line
across the land in question, and had a conversation with the
defendant, who objected to the stringing of a wire thereon,
telling the witness not to trespass on his property. The witness testified, "He told us it wouldn't be safe for us to go on
there and erect a wire;" that the witness construed this as a
threat of violence and desisted; that the matter was reported
to the Northern Pacific Railway Company and, after a time,
the witness was told to go ahead and put up the wire, which
was accordingly done. The assistant line supervisor of
the Western Union Telegraph Company corroborated this
witness as to the defendant's interference with the work. It
seems to be admitted that the wire was strung after the

temporary injunction was obtained.    The county treasurer
for Yakima county testified that the Northern Pacific Rail-
way Company had paid all taxes on the right of way in
Yakima county ever since the line was built; that the com-
pany made return to the assessor, showing the description
and width, and the taxes were levied on so many lineal feet
or miles of right of way, and the acreage of the right of way
was deducted from the subdivisions assessed to other parties.
The assessor stated that some taxes are now due.    The in-
ception of defendant's interest in this land, so far as the
evidence shows, was by deed to him from one George Weigel
and wife, dated March 26, 1903.

The respondent contends, and the court seems to have en-
tertained the opinion, that the evidence failed to show title
to the right of way in question in the appellant.    Assuming
that proof of title was essential to a maintenance of this
action, we think the stipulation and evidence *prima facie*
established it.    This court will take judicial notice of the
act of Congress of July 2, 1864 (13 Stat. at Large, 365),
creating the Northern Pacific Railroad Company, and
granting it lands in aid of construction and a right of way
over the public lands.    In construing this and similar grants,
the supreme court of the United States and the Federal
courts have repeatedly recognized a marked distinction be-
tween the land grant in aid of construction and the grant
of the right of way.    While both are grants *in praesenti,*
the grant of the right of way is unlike the land grant in
that, upon definite location of the line, it takes effect by re-
lation as of the date of the grant.    The doctrine is now
firmly established that all persons acquiring any portion of
the public lands, before the definite location but after the
passage of the granting act, take the same subject to the
right of way of the proposed road.    *Railroad Co. v. Bald-
win,* 103 U. S. 426; *Bybee v. Oregon & California R. Co.,*
139 U. S. 663; *Northern Pac. R. Co. v. Townsend,* 190 U. S.

267; *Northern Pac. R. Co. v. Murray,* 87 Fed. 648; *Nielsen v. Northern Pac. R. Co.,* 184 Fed. 601.

The respondent argues that, before this doctrine of relation can be invoked, there must be proof of (1) selection by the company of its line or route, (2) notice to the land department of such selection, (3) approval of the route by the land department; and it is contended that none of these things was proven. It may be conceded that all of these things are essential. They go to make up the definite location, as that term is understood and used in the authorities. It was stipulated: "That the date of the definite location of right of way and construction of the railroad of the Northern Pacific Railway Company through the premises in controversy herein was in the spring of the year 1884." This necessarily implies a compliance with all of the conditions precedent to a valid definite location, giving the right to construct the road upon the right of way so located. The stipulation must be construed to mean a valid definite location. Respondent also calls attention to the fact that the stipulation refers to the railroad of the Northern Pacific *Railway* Company, and not of the Northern Pacific *Railroad* Company. Taken in context this is immaterial. It was also stipulated that the railway company is the successor and grantee of the railroad company, and owns the railroad, telegraph line, right of way, franchises, rights and privileges acquired under the grant of July 2, 1864. The strained and technical interpretation of the stipulation invited cannot be invoked to defeat its obvious purpose and meaning.

It is also contended that there was no evidence that the right of way across this land was ever in possession of, or used by, the appellant or its predecessor. It is argued that the stipulation is silent as to whether any one was ever in actual occupancy of the land, and as to whether the appellant or the Northern Pacific Railroad Company ever operated any road on the land. This is true, but the appel-

lant's construction foreman of telegraphs testified that the railroad and telegraph line had been located on the land in question as at present ever since 1887 to his knowledge, and it cannot be questioned that as now located it crosses this land. He also testified that the telegraph line has ever since been used by the Northern Pacific for train dispatching and commercial purposes, the line extending from Portland to St. Paul, and that the telegraph line is about forty feet from the center of the main track actually in use. We think there was sufficient evidence to show an actual possession and use of the right of way across this land in the operation of both railroad and telegraph line, at least ever since 1887.

We are of the opinion also that the evidence was sufficient to establish *prima facie* an adverse and uninterrupted possession in the appellant and its predecessor since that time. On the whole record, we are constrained to hold that the right of the appellant to the right of way across the land in question was *prima facie* established. In any event, a present possession and use of the right of way by the appellant under a claim of title was fully established, and authority is not wanting that in such a case injunction will lie to protect such possession and use, leaving the question of title to be tried out in an appropriate action. *Pennsylvania Co. v. Ohio River Junction R. Co.*, 204 Pa. 356, 54 Atl. 259; *Pittsburg, S. & W. R. Co. v. Fiske*, 123 Fed. 760; *Kindred v. Union Pac. R. Co.*, 168 Fed. 648; *Cheesman v. Shreeve*, 37 Fed. 36.

Finally, the respondent contends that no acts or threats were proven sufficient to invoke the remedy by injunction. It is claimed that the evidence merely shows that he at one time warned the appellant's construction foreman to keep off of his—respondent's—land, and at another time told an employee of the Western Union Telegraph Company not to trespass on his—respondent's—land, and that it would not be safe for him to go on there and erect a wire. The

evidence shows that this last incident occurred just prior to the commencement of this action, and that it was reported to the appellant. Appellant's foreman of construction testified that the work was being done with his knowledge and consent. Moreover, the bringing of this action was of itself a sufficient ratification of authority from the appellant to the Western Union Telegraph Company to string the wire. While the respondent's warning was in terms to keep off his land, the words must be construed in the light of the circumstances. The wire was being strung upon the appellant's right of way and upon the appellant's poles. It was that work to which the respondent's objection was directed. The men to whom they were addressed evidently regarded them as a threat of violence in case the work was continued, and that was at least their most obvious and natural meaning. It appearing that a persistence in the work might have resulted in a breach of the peace, injunction was the proper remedy. *Pennsylvania Co. v. Ohio River Junction R. Co., supra.* The time has passed when the determination of rights of possession may be left to wager of battle. The injunction should have issued.

The judgment is reversed.

MOUNT, C. J., FULLERTON, PARKER, and MORRIS, JJ., concur.