SMITH et al., Respondents, *v.* NORTHERN PACIFIC RY. CO., Appellant.

(No. 3,497.)

(Submitted March 30, 1915.   Decided April 21, 1915.)

[148 Pac. 393.]

*Northern Pacific Land Grant—Right of Way—Scope of Grant—Rights of Subsequent Grantees—Damages to Property.*

Railroads—Grant of Right of Way—Extent of Grant.

1. The grant of land to the Northern Pacific Railroad company for right of way purposes took effect at the time the Act was approved; the title conveyed by it dates from that time; the rights conferred upon the company, its successors and assigns, are subject to no conditions save those expressed or necessarily implied; it was founded on valuable considerations and should receive a more liberal construction, in favor of the purposes for which it was made, than a mere private grant.

Same.

2. The grant above mentioned carried with it, among other things, not only the exclusive possession of the lands described for the construction of a railroad, but also the right to erect thereon all structures necessary and essential to its operation.

[As to right of railroad company to permit use of right of way or station grounds by private individual, see note in Ann. Cas. 1912A, 180.]

Same.

    3.  When a grant of a right of way is made to a railroad without restrictions, it contemplates not merely the railroad as established in the first instance, but the railroad with all its necessary appurtenances as it may from time to time come necessarily to be.

Same—Rights of Subsequent Grantees—Injury to Property.

    4.  *Held,* that since the grant of land to the Northern Pacific Railroad Company for right of way purposes contemplated at the outset the erection and maintenance of such structures, equipment and machinery necessary for the operation of the railroad as it might be established in the first instance and come thereafter to be, and since coaldocks in its railroad yards near a city are necessary appliances, plaintiffs, as subsequent grantees of land adjacent to defendant company's right of way taking title from the United States, the common grantor, hold subject to the rights vested in the company by the prior grant, and are therefore not entitled to recover damages for injury to their property caused by coal-dust, soot, smoke, noises, *etc.,* occasioned by the operation of such coal-docks.

*Appeal from District Court, Missoula County; R. Lee McCulloch, Judge.*

ACTION by James E. and Julia Smith against the Northern Pacific Railway Company.  Judgment for plaintiffs and defendant appeals.  Reversed.

*Messrs. Gunn & Rasch* and *Mr. Wm. F. Wayne,* for Appellant, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

The grant was one *in praesenti,* and took effect at, and the title thereby conveyed relates back to, the time of its approval, and the rights which it conferred upon the grantee, its successors and assigns, are subject to no conditions except those expressed in the grant.  (*Wilkinson* v. *Northern Pac. R. Co.,* 5 Mont. 538, 6 Pac. 349; *Bybee* v. *Oregon etc. R. Co.,* 139 U. S. 663, 35 L. Ed. 305, 11 Sup. Ct. Rep. 641; *Doran* v. *Central Pac. Ry. Co.,* 24 Cal. 245; *Northern Pac. Ry. Co.* v. *Wadekamper,* 70 Wash. 392, 126 Pac. 909.)  The grant was not a mere gift (*Moon* v. *Salt Lake County,* 27 Utah, 435, 76 Pac. 222), nor a mere bounty (*United States* v. *Denver etc. Ry. Co.,* 150 U. S. 1, 37 L. Ed. 975, 14 Sup. Ct. Rep. 11), but it was a contract "founded on a mutual consideration" (*Northern Pac. R. Co.* v. *Carland,* 5 Mont. 146, 3 Pac. 134), and "such legislation stands upon a somewhat different footing from merely a private grant,

and should receive at the hands of the courts a more liberal construction in favor of the purposes for which it was enacted." (*Moon* v. *Salt Lake County, supra.*)    By the terms of the grant, the railroad company was not only given the right and authority, but it was made its duty, to construct, maintain and operate a railroad "with the appurtenances," in order to carry into effect the purposes of the Act.    This included all the means, appliances and instrumentalities requisite for the proper operation of the road, and these would have been included in the grant of the right of way made, as it was, for railroad purposes, even if the term "appurtenances" had not been used.    (*Mattice* v. *Chicago etc. Ry. Co.*, 130 Iowa, 749, 107 N. W. 949.)    As was said in *United States Trust Co.* v. *Atlantic etc. Ry. Co.*, 8 N. M. 673, 47 Pac. 725: "In its ordinary acceptation, and large sense, the term 'railroad' fairly includes all structures which are necessary and essential to its operation."    (*United States* v. *Denver etc. Ry. Co.*, 150 U. S. 1, 37 L. Ed. 975, 14 Sup. Ct. Rep. 11; *Atchison etc. Ry. Co.* v. *Kansas etc. Ry. Co.*, 67 Kan. 569, 70 Pac. 939, 73 Pac. 899; *Northern Pac. R. Co.* v. *Carland,* 5 Mont. 146, 3 Pac. 134.)

The defendant is the successor of the Northern Pacific Railroad Company, and became vested with all the rights which accrued to its predecessor in interest under the grant.    It has long since been settled law that the rights of persons, acquiring title to the public lands subsequent to the making of a grant for railroad right of way purposes, are "inferior to the right of way to the company, and must yield to the superior legal title." (*Wilkinson* v. *Northern Pac. R. Co.*, 5 Mont. 538, 6 Pac. 349; *Bybee* v. *Oregon etc. R. Co.*, 139 U. S. 663, 35 L. Ed. 305, 11 Sup. Ct. Rep. 641; *Doran* v. *Central Pac. Ry. Co.*, 24 Cal. 245; *Northern Pac. Ry. Co.* v. *Wadekamper,* 70 Wash. 392, 126 Pac. 909; *Cassidy* v. *Old Colony R. R.*, 141 Mass. 174, 5 N. E. 142; *Kipp* v. *Davis-Daly Copper Co.*, 41 Mont. 509, 21 Ann. Cas. 1372, 36 L. R. A. (n. s.) 666, 110 Pac. 237; *Western Union Tel. Co.* v. *Polhemus,* 178 Fed. 904, 29 L. R. A. (n. s.) 465, 102 C. C. A. 105; *Brainard* v. *Clapp,* 64 Mass. 6, 57 Am. Dec. 74.)

The plaintiffs base the claim of their asserted right to recover in this case upon section 14 of Article III of the Constitution, which provides that "private property shall not be taken or damaged for public use without just compensation having been first made or paid into court for the owner," and in support of it, cited in the court below, among others, the Tennessee case of *Louisville etc. Terminal Co.* v. *Lellyett*, 114 Tenn. 368, 1 L. R. A. (n. s.) 49, 85 S. W. 881, and the New York case of *Cogswell* v. *New York etc. R. Co.*, 103 N. Y. 10, 57 Am. Rep. 701, 8 N. E. 537. For the purpose of the argument we shall concede here, as we conceded in the court below, that the authorities are hopelessly divided upon the question whether statutory authority alone to commit an act which injuriously affects the property of others may be urged as a defense to an action for damages where the person whose property is injured has neither consented to nor acquiesced in the doing of that which causes the injury. The facts of this case do not require a determination here of that question. In this case, the right of way was acquired from the common grantor and predecessor of both parties, plaintiffs and defendant, in whom the title to plaintiffs' land was still vested at the time the grant was made, and in whom it continued to be vested for a long time afterward. The grant of the right of way was a conveyance made by the United States for the purpose of constructing and operating a railroad "with the appurtenances," not only in its public and governmental capacity, but also in its proprietary capacity as owner, and it included the right to make use of the lands granted for all purposes "necessary and suitable * * * in constructing or operating" the railroad. (*Hord* v. *Holston River R. Co.*, 122 Tenn. 399, 135 Am. St. Rep. 878, 19 Ann. Cas. 331, 123 S. W. 637; *Chicago-Rock Island etc. Ry. Co.* v. *Smith*, 111 Ill. 363; *Bennett* v. *Long Island R. Co.*, 181 N. Y. 431, 74 N. E. 418; *Louisville & N. R. Co.* v. *Scomp*, 124 Ky. 330, 98 S. W. 1024; 1 Elliott on Railroads, par. 418; *Kotz* v. *Illinois Central R. Co.*, 188 Ill. 578, 59 N. E. 240; *Illinois Central R. Co.* v. *Anderson*, 73 Ill. App. 621; *Irwin* v. *Yazoo & M. V. R. Co.*, 99 Miss. 394,

55 South. 49; *Gillespie* v. *Buffalo R. & P. Co.,* 226 Pa. 31, 74
Atl. 738; *Hileman* v. *Chicago G. W. Ry. Co.,* 113 Iowa, 591, 85
N. W. 800; *Chicago M. & St. P. Ry. Co.* v. *Rehnke,* 113 Minn.
390, 129 N. W. 771; *White* v. *Chicago etc. R. Co.,* 122 Ind. 317,
7 L. R. A. 257, 23 N. E. 782; *Nunnamaker* v. *Columbia Water
Power Co.,* 47 S. C. 485, 58 Am. St. Rep. 905, 34 L. R. A. 222,
25 S. E. 751; *Watts* v. *Norfolk & W. R. Co.,* 39 W. Va. 196, 45
Am. St. Rep. 894, 23 L. R. A. 674, 19 S. E. 521.)   The rule
announced in the foregoing cases and authorities is determina-
tive of this case in defendant's favor.

*Messrs. Hall & Whitlock,* for Respondents, submitted a brief.

We believe the weight of authority is to the effect that if
certain acts are sufficient to constitute a private nuisance,
authorization of them by the legislature or by Congress does
not in any way change their character or constitute a defense.
We are free to admit at the outset that it would not be possible
for every person living near a railroad track to recover damages
for injuries to his property caused by passing trains or the
ordinary operation of trains upon the railroad, and the reason
for this is not that the railroad company has a charter authoriz-
ing it to operate, but that as members of the community indi-
viduals must put up with a certain amount of annoyance in
consideration of the public good, and where the damage suffered
comes within that fringe of damage which must be borne by
all, the injury constitutes a so-called *damnum absque injuria,*
but when the damage suffered or the burden imposed is greater
than that imposed upon the public generally, and does not fall
within the class just mentioned, the same constitutes a nuisance,
and the old maxim, *"Sic utere tuo ut alienum non laedas,"*
applies.

The cases upon the effect of legislative authorization in mat-
ters of this kind are collected in a long note in 1 L. R. A. (n. s.)
1–137.   The leading case upon the subject is the case of *Balti-
more etc. R. R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317,
27 L. Ed. 739, 2 Sup. Ct. Rep. 719.   The grant in that case

was as broad as in our case, and the permission was granted by Act of Congress. The action was brought for damage caused by the erection and maintenance of an engine-house and machine-shop on a parcel of land immediately adjoining plaintiff's church, which tended to disturb the congregation and to destroy the value of the building as a place of public worship. Judgment was rendered for the plaintiff below and affirmed by the supreme court of the United States. A case very similar to the case at bar, which was decided in favor of our contention, is *Spring* v. *Delaware etc. R. R. Co.,* 88 Hun, 385, 34 N. Y. Supp. 810, referred to in 1 L. R. A. (n. s.) 75, note, affirmed in 157 N. Y. 692, 51 N. E. 1094, and in that case the defendant was held liable notwithstanding the fact it was authorized by the legislature to operate its railroad. The leading New York case is *Cogswell* v. *New York etc. R. Co.,* 103 N. Y. 10, 57 Am. Rep. 701, 8 N. E. 537, which together with its following in the state of New York hold in accordance with our contention. To the same effect are *Wylie* v. *Elwood,* 134 Ill. 281, 23 Am. St. Rep. 673, 9 L. R. A. 726, 25 N. E. 570; *Sullivan* v. *Royer,* 72 Cal. 248, 1 Am. St. Rep. 51, 13 Pac. 655; *Adams* v. *Chicago etc. Ry. Co.,* 39 Minn. 286, 12 Am. St. Rep. 644, 1 L. R. A. 493, 39 N. W. 629; *Anderson* v. *Chicago etc. Ry. Co.,* 85 Minn. 337, 88 N. W. 1001; *Rainey* v. *Red River etc. R. Co.,* 99 Tex. 276, 122 Am. St. Rep. 622, 13 Ann. Cas. 580, 3 L. R. A. (n. s.) 590, 89 S. W. 768, 90 S. W. 1096; *King* v. *Vicksburg etc. Light Co.,* 88 Miss. 456, 117 Am. St. Rep. 749, 6 L. R. A. (n. s.) 1036, 42 South. 204; *Alabama etc. Ry. Co.* v. *King,* 93 Miss. 379, 22 L. R. A. (n. s.) 603, 47 South. 857; *Pickens* v. *Coal River Boom etc. Co.,* 66 W. Va. 10, 24 L. R. A. (n. s.) 354, 65 S. E. 865; *Choctaw etc. R. Co.* v. *Drew,* 37 Okl. 396, 44 L. R. A. (n. s.) 38, note, and cases cited, 130 Pac. 1149.

An examination of the cases opposing our contention will disclose that the decisions go off either on the ground that the acts shown constitute simply a *damnum absque injuria,* or that the distinction between public and private nuisance has not been observed.

We have no fault to find with the cases cited early in appellant's brief to the effect that the grant contained in the Act of 1864 dates from the time of the passage of the Act, nor do we find any language in the cases there cited, particularly the two Montana cases which in any way seems to indicate that in the opinion of our court immunity was granted from liability for private nuisance. No such question arose in those cases. The rule of construction of grants of this character is established by a long line of decisions of the supreme court of the United States, beginning with the case of *Dubuque etc. R. R. Co.* v. *Litchfield,* 23 How. (U. S.) 66, 16 L. Ed. 500, and followed by the following cases, and many others: *Rice* v. *Minnesota etc. R. R. Co.,* 1 Black. (U. S.) 358, 17 L. Ed. 147; *Central Transp. Co.* v. *Pullman's Palace Car Co.,* 139 U. S. 24, 35 L. Ed. 55, 11 Sup. Ct. Rep. 478; *Louisville etc. R. R. Co.* v. *Kentucky,* 161 U. S. 677, 40 L. Ed. 849, 16 Sup. Ct. Rep. 714; *United States* v. *Oregon etc. R. R. Co.,* 164 U. S. 526, 539, 41 L. Ed. 541, 17 Sup. Ct. Rep. 165; *Knoxville Water Co.* v. *Knoxville,* 200 U. S. 22, 34, 50 L. Ed. 353, 26 Sup. Ct. Rep. 224.

The circumstances surrounding this case show that the use sought to be made of the premises granted to defendant railway company for right of way purposes was not within the contemplation of the parties at the time of the grant; hence the defendant should be held liable for the damage flowing from its acts. (*Missouri etc. Ry. Co.* v. *Mott,* 98 Tex. 91, 70 L. R. A. 579, 81 S. W. 285; *Mosier* v. *Oregon Nav. Co.,* 39 Or. 256, 87 Am. St. Rep. 652, 64 Pac. 453; *Missouri etc. Ry. Co.* v. *Anderson,* 36 Tex. Civ. App. 121, 81 S. W. 781; *Missouri etc. Ry. Co.* v. *Wetz,* 97 Tex. 581, 80 S. W. 988.)

MR. JUSTICE SANNER delivered the opinion of the court.

The plaintiffs are the owners of certain lots in block 95 of the Railroad Addition to the city of Missoula, upon which several dwelling-houses are situated, occupied by the plaintiffs and their tenants. In the fall of 1907 and the early part of 1908, the defendant, a railway corporation, erected a coal-dock upon

its right of way in its railroad yards at Missoula for the purpose of supplying its locomotive engines with coal. The dock is about eighty feet high, with a raised track on the north side from which coal is dumped into it, and by means of machinery and appliances power is provided for the operation of the dock in handling the coal. The complaint alleges that the dock contains, and always has contained, fine coal and coal-dust as a part of all the coal there used; that in and about the regular use and operation of said dock, fine coal, dust, soot and smoke are caused to be liberated and carried from said dock and from the locomotives and appliances left there to, upon and against the premises of the plaintiffs about 150 feet distant; that by reason of the use and operation of said dock, the bringing of cars and locomotives thereto, the unloading of cars and the loading of locomotives with coal, great and intolerable noises, sounds, dust, smoke, soot and dirt are and have been caused to emanate from said dock, machinery and instrumentalities, and great vibrations, shaking and jarring of the air, ground and buildings in the vicinity thereof have been occasioned; that the dock was constructed in a thickly populated residence district of Missoula, and since it has been in operation, and whenever it is used, coal, coal-dust, soot and smoke have been carried to and cast upon the premises and household goods of the plaintiffs, covering the same, and sifting through doors, windows, cracks and openings in plaintiffs' houses, has covered the furniture, household goods and personal effects of the plaintiffs and their tenants, damaging and deteriorating the same in value; that by reason of the sounds, noises, vibrations, shaking and jarring it is difficult to hear in or at plaintiffs' houses and premises, and plaintiffs and their tenants have been kept awake nights; that it is necessary to close the windows day and night, excluding fresh air; that the plastering has become cracked and said operations cause the premises to vibrate and to be greatly jarred and shaken; that the acts complained of constitute a private nuisance to the plaintiffs, rendering the occupancy of the premises uncom-

fortable and causing a great diminution in the value thereof, all to the plaintiffs' damage in the sum of $3,000.

The answer admits that in the regular operation of the coal-dock some coal-dust and smoke are at times carried and blown from the dock to and upon plaintiffs' premises, and that such operation is accompanied by noises caused by the working of the machinery and appliances and the movement of engines and locomotives; but it is denied that the acts of the defendant in the operation and use of the dock constitute a private, or any, nuisance, and it is alleged that the dock has always been operated without the causing of any annoyance, damage or injury to plaintiffs, other than such as are incident to the ordinary operation of said dock.

By way of affirmative defense, the defendant alleges that it is a common carrier of persons and freight on and over its line of railroad extending from St. Paul, Minnesota, through Montana and thence westward to the Pacific coast; that it is the successor in interest to all property and property rights of the Northern Pacific Railroad Company, a railroad corporation created by the Act of Congress of July 2, 1864; that by said Act of Congress there was granted to said Northern Pacific Railroad Company, its successors and assigns, for the construction and operation of said railroad, a right of way through the public lands of the United States, and at the time said grant was made, all the land upon which said railroad was afterward constructed, and is now being operated, and the lands now owned by plaintiffs, were, and for a long time thereafter continued to be, a part of the unappropriated public domain of the United States; that for the purpose of enabling the defendant to properly discharge the duties imposed upon it by said Act of Congress, and its duties as a common carrier, it is necessary to construct, erect, operate and use coal-docks upon its said right of way at railroad stations along the line of its railroad in order to provide and supply its engines and locomotives with coal for the operation of its trains; that the coal-dock in question was erected and is situated and operated upon the defendant company's own land

and premises, within its railroad yards at Missoula, Montana, and upon and within the granted right of way in order to enable it properly to operate its said railroad.

The plaintiffs, disdaining to reply, moved for judgment on the pleadings, which motion was granted. From the judgment thus entered the defendant has appealed.

In the absence of a contention that the coal-dock was improperly equipped or operated, but one question is presented, *viz.:* Can the defendant, under the circumstances pleaded, maintain its coal-dock as now, placed, without responsibility to the plaintiffs, notwithstanding that, though adequately equipped and carefully operated, injury and damage are caused to their property thereby? We think it can, for the following reasons: The defendant is the successor in interest of the Northern Pacific Railroad Company, which by the Act of Congress of July 2, 1864, was created a body corporate for the purpose of constructing and maintaining "a continuous railroad and telegraph line," was vested with all the powers, privileges and immunities necessary to accomplish that result, and was granted "the right of way through the public lands * * * to the extent of 200 feet in width on each side of said railroad," such railroad to be "constructed in a substantial and workmanlike manner, with all the necessary draws, culverts, bridges, viaducts, crossings, turnouts, stations and watering places, and all other appurtenances." So far as this Act constituted a grant, it was a [1] grant *in praesenti;* it took effect at the time the Act was approved; the title conveyed by it dates from that time, and the rights conferred upon the Northern Pacific Railroad Company, its successors and assigns, are subject to no conditions save those expressed or necessarily implied, such as the construction of the railway itself. (*Wilkinson* v. *Northern Pac. R. R. Co.*, 5 Mont. 538, 6 Pac. 349; *Nielsen* v. *Northern Pacific Ry. Co.*, 184 Fed. 601, 106 C. C. A. 581; *Northern Pacific Ry. Co.* v. *Townsend*, 190 U. S. 267, 47 L. Ed. 1044, 23 Sup. Ct. Rep. 671; *Northern Pacific Ry. Co.* v. *Wadekamper*, 70 Wash. 392, 126 Pac. 909.) It was not, however, a mere donation; but,

founded on valuable considerations, it "stands upon a somewhat different footing from merely a private grant, and should receive a more liberal construction in favor of the purposes for which it was enacted." (*United States* v. *Denver & Rio Grande Ry. Co.,* 150 U. S. 1, 37 L. Ed. 975, 14 Sup. Ct. Rep. 11; *Moon* v. *Salt Lake County,* 27 Utah, 435, 76 Pac. 222.) Its scope as [2] applied to what may be called the incidents or appurtenances of the railroad has been thus expressed by this court: " 'It is a well-known and reasonable rule, in construing a grant, that, when anything is granted, all the means to attain it, and all the fruits and effects of it, are granted also.' Here is a grant of a right of way through the public lands 'for the construction of a railroad and telegraph.' Such a grant carries with it the right to the exclusive possession of the lands described for the purpose aforesaid; to make excavations, cuts and fills in the soil or ground; to construct a roadbed of suitable width and grade; to lay ties and rails thereon, and to erect upon the lands described, as and included in the right of way, all buildings, shops, water stations, depots, *etc.,* necessary and suitable to be used in constructing or operating such railroad." (*Northern Pacific R. R. Co.* v. *Carland,* 5 Mont. 146, 169, 3 Pac. 134.) And the supreme court of the United States, construing a similar grant with reference to the authority to take from adjacent public lands, timber and other material necessary for the construction of the railroad, likewise holds that "the term 'railroad' fairly includes all structures which are necessary and essential to its operation." If, therefore, coal-docks are necessary to the maintenance of such a railroad as was authorized by the Act in question, it must be held that the erection and proper operation of coal-docks at places upon the right of way suitable to such purposes and whenever required, was in contemplation of the grant from the beginning. This conclusion becomes pertinent to the present case by virtue of the allegations of the answer, admitted by failure to reply, that the use of coal-docks at stations upon defendant's right of way is necessary to carry on its railroad, and for that purpose the coal-dock in question was placed and

is operated at its present location within the yards and upon the right of way of the defendant at the station of Missoula.

What, then, is the consequence, having in mind that at the time the grant was made not only the defendant's right of way but the lands now owned by the plaintiffs as well, were public domain, the lands now owned by the plaintiffs remaining such for sometime after the grant. Confessedly, the plaintiffs are in no better position to complain than the United States would be if these lands were still government property but covered by government buildings. Could the United States, the grantor of the defendant, successfully complain of the coal-dock as a nuisance asserting no broader grounds than are presented by this record? Respondents say yes, if the coal-dock was not in place when the government buildings were erected. But the general rule that a grant of land for railway purposes conveys the right to use such land not only for the passage of trains, but for the maintenance of such structures and machinery as may be required for railway purposes "prevents a grantor from successfully asserting a claim for damages for injury from noise, smoke and the like resulting from the proper operation of the road, and it precludes him from successfully prosecuting an action for a nuisance although annoyance from smoke, noise and similar things necessarily incident to the operation of the road, is suffered by him." (Elliott on Railroads, sec. 418; *Chicago etc. Ry. Co.* v. *Smith*, 111 Ill. 363.) If the location of the coal-docks upon the right of way, whenever and wherever they might be required for railway purposes, was contemplated by the grant, the subsequent erection of buildings by the grantor on lands retained, even though before the installation of any particular coal-dock, could not of itself affect the situation. This was decided in principle by *Kipp* v. *Davis-Daly Copper Co.*, 41 Mont. 509, 110 Pac. 237, wherein, touching the right of a city to authorize the use of its streets by a freight railway to the prejudice of abutting owners, this court said: "The respective rights of the abutting owner and the public are dependent upon the fact of dedication. In view of these provisions as well as of the rule of law recognized everywhere, the

authorities which control streets and highways may use or permit the use of them in any manner or for any purpose which is reasonably incident to the appropriation of them to public travel and to the ordinary uses of streets or highways under the different conditions which arise from time to time. For a highway is created for the use of the public, not only in view of its necessities and requirements as they exist, but also in view of the constantly changing modes and conditions of travel and transportation, brought about by improved methods and required by the increase of population and the expansion in the volume of traffic due to the ever-increasing needs of society. Were this not so, any change in these respects would require a readjustment of rights as between the public and the abutting property owner, because the result of it would of necessity be held an imposition of a new burden upon the highway, and hence upon the property of the abutting owner. For these changing public uses the owner must be presumed to have received compensation when the highway was created."

The same general reflections and the same rule are applicable to railroads. When the grant of a right of way is made to a railroad without restrictions, it contemplates not merely the railroad as it may be established in the first instance, but the railroad with all its necessary appurtenances as it may from time to time come necessarily to be. On this point the authorities are not at variance. Cases involving coal-docks are rare, it is true, but others no less in point are quite abundant. (*Illinois Cent. R. R. Co.* v. *Anderson,* 73 Ill. App. 621; *Kotz* v. *Illinois Cent. R. Co.,* 188 Ill. 578, 59 N. E. 240; *Gillespie* v. *Buffalo R. & P. Co.,* 226 Pa. 31, 74 Atl. 738; *Hileman* v. *Chicago etc. Ry. Co.,* 113 Iowa, 591, 85 N. W. 800; *White* v. *Chicago etc. R. Co.,* 122 Ind. 317, 7 L. R. A. 257, 23 N. E. 782; *Cassidy* v. *Old Colony R. R.,* 141 Mass. 174, 5 N. E. 142; *Western Union Tel. Co.* v. *Polhemus,* 178 Fed. 904, 29 L. R. A. (n. s.) 465, 102 C. C. A. 105; *Louisville & N. R. Co.* v. *Scomp,* 124 Ky. 330, 98 S. W. 1024.)

In view of the construction given in the *Carland Case* to the Northern Pacific grant, *Illinois Central R. R.* v. *Anderson, supra,* is singularly instructive.    In 1853 one Cartwright granted to the railroad company a right of way across a certain tract "for the purpose of constructing, maintaining and operating thereon, a single or double track railroad, with all its necessary appurtenances, and for all uses and purposes connected with the construction, repair, maintenance and complete operation of said railroad."    The railroad was built in 1856, at first with a single track.    In 1859 a portion of Cartwright's land abutting on the right of way was platted as an addition to the town of Effingham and the title thereto passed to other parties, from whom, in 1888, the complainant acquired her premises, on which she erected her home.    The town of Effingham became a city and the portion thereof occupied by the complainant was a populous portion of said city.    The company added tracks from time to time to meet the local growth until the city became the end of a division, whereupon in 1895 the company put in a turntable with a switch leading thereto.    The turntable was located about thirty feet from complainant's house, but it together with the switch leading to it were wholly upon the right of way.    She alleged that the use of this switch and the turntable by the railway company brought the engines nearer to her house than formerly, kept them there longer, increased the noise, and cast upon her premises and into her house more or less gas, smoke and soot, and to an appreciable degree, added to the burden which up to that time had been borne by her property, and rendered it less valuable than it would be if not required to bear such burden.    The court said: "It is not contended by appellee that the turntable and switch are improperly constructed, or that the engines upon them have at any time been negligently or improperly used or operated, or that because of any unlawful or wrongful act in the manner of construction or use, a nuisance exists; but that though constructed in a proper manner and used and operated in a proper way, the natural result of their construction and operation in so close proximity

to appellee's premises is a nuisance of which she can complain, and is an injury to her property, for which she can recover of appellant. The acts complained of here do not constitute a public nuisance nor a private nuisance that can be abated by law. The noise, gas, smoke and soot complained of may, in a sense, be a private nuisance but appellee derived her title through Cartwright after his grant to appellant; and if upon the facts shown he would have no standing in court, had he remained the owner, then the appellee can have none. This case does not fall within the rules applicable to such cases as where the grant was made for no specific purpose; where the grant was made by a stranger to the title of the party injured; where the grant was made by a city council or other legislative body, nor where the injury arises from improper construction or some want of proper care, or some negligence in the manner of its use. * * * Cases between a railroad company and a grantor or condemnee fall in the same class. In such cases the consideration for the grant or the damages assessed on condemnation include, once for all, the full compensation to be paid for any lawful use that fairly falls within the terms of the grant or the specifications of the condemnation. In the absence of improper manner of construction or negligence in the manner of use, the only question in such cases is, Are the terms of the grant, or the purposes specified in the condemnation, broad enough to include the uses complained of? The terms of Cartwright's grant are clearly broad enough to include the right in appellant to construct and use on its right of way, the turntable and switch complained of.''

Counsel for plaintiffs argue strongly, and cite many authorities to the effect that no power exists in Congress or elsewhere to authorize the maintenance of a private nuisance; but that is not the question. The Act of July 2, 1864, is not only a legislative authorization to the Northern Pacific Railroad Company to construct and operate a railroad, but it is a grant from the United States, in its proprietary capacity, of certain lands for railroad purposes. Since this grant contemplated at the outset the construction and maintenance of such structures,

equipment and machinery as might be necessary for the opera-
tion of the railroad, and since the coal-dock in question is neces-
sary for that purpose, the conclusion must be that the plaintiffs,
as subsequent grantees of the land adjacent to defendant's right
of way, taking title from the same source as the defendant, hold
subject to the rights vested in it by the prior grant. (*Illinois
Cent. R. R.* v. *Anderson, supra; Cassidy* v. *Old Colony R. Co.,
supra; Chicago etc. R. Co.* v. *Smith,* 111 Ill. 363; *Bennett* v.
*Long Island R. Co.,* 181 N. Y. 431, 74 N. E. 418.) Plaintiffs,
therefore, were not entitled to prevail upon the case presented
by the pleadings.

The judgment appealed from is accordingly reversed and the
cause is remanded, with directions to enter judgment for the
defendant conformable to the stipulation of the parties.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY
concur.

(Submitted March 30, 1915. Decided April 21, 1915.)