## WARE et al. v. DAVIDSON et al.
## No. 3588.

Court of Civil Appeals of Texas. Amarillo.
June 10, 1931.

Rehearing Denied Oct. 14, 1931.

Cooper & Lumpkin, of Amarillo, for appellants.

Morgan, Culton, Morgan & Britain, Madden, Adkins, Pipkin & Keffer, Reeder & Reeder, and Underwood, Johnson, Dooley & Simpson, all of Amarillo, and Thompson & Barwise, of Fort Worth, for appellees.

JACKSON, J.

This suit was instituted in the district court of Potter county, Tex., by the plaintiffs, C. T. Ware, R. C. Ware, and C. R. Garner, against the individual defendants, Alex Davidson, Tullie M. Dickson, and her husband, J. B. Dickson, E. S. Blasdel, and Walter B. Allen, and against the corporate defendants, the Pecos & Northern Texas Railway Company, the Panhandle & Santa Fé Railway Company, and the Fort Worth & Denver City Railway Company, to recover title and possession of certain particularly described portions of section 156, block 2, A. B. & M., in Potter county, Tex.

The defendants answered separately, each disclaiming any interest in the land sued for save and except certain specific tracts particularly described in his individual answer. The judgment of the trial court disposes of all parties and their respective claims.

This appeal is by the plaintiffs, and involves only the title to the land adjudged by the trial court to be vested in the defendant, the Fort Worth & Denver City Railway Company, and no further notice of the disposition of the rights asserted by the other defendants is necessary.

The plaintiffs' petition is in the usual form of trespass to try title, and they allege that the Fort Worth & Denver City Railway Company is a corporation, organized and authorized to do business under and by virtue of the laws of the state of Texas.

The Fort Worth & Denver City Railway Company disclaimed as to all the lands described in plaintiffs' petition except a strip 50 feet wide on the north and constituting a part of the tract of land claimed by plaintiffs. The 50-foot strip claimed by this defendant it describes by metes and bounds.

As a defense to plaintiffs' suit in trespass to try title, this defendant pleaded not guilty and the statute of ten years' limitation as to the land claimed by it and described in its answer.

In a supplemental petition the plaintiffs alleged that the Fort Worth & Denver City Railway Company should not be permitted to claim a right of way more than 100 feet wide across said section 156 under any grant made to it by the state of Texas; that said section, of which the land in controversy is a part, was awarded by the state as a part of the free school lands to Frank Lester on September 10, 1887, and said defendant thereafter built its line of railway across said section; that by mesne conveyances from Lester, the plaintiffs are the owners of the title to all of said section, and, if defendant was ever authorized to appropriate a right of way 200 feet wide across said section, it failed and refused to do so and only appropriated a right of way 100 feet wide, which is 50 feet on each side of the center of its railway; that it fenced but 100 feet in width for its right of way and never claimed ownership to any greater part of said section; that on July 7, 1893, it accepted from H. B. Sanborn and J. T. Holland, the owners in fee of said section, a deed conveying to it a strip of land 100 feet wide for its right of way over said section, in which deed defendant's land is described as 50 feet on each side of the center of its tracks.

The Fort Worth & Denver City Railway Company, in a supplemental answer, demurred generally and specially to plaintiffs' supplemental petition, and alleged that it was incorporated in the year 1873 by a special act of the Legislature of the state of Texas (Sp. Laws 1873, c. 208); that said act granted to it a right of way to the extent of 200 feet in width through the public lands of the state; that, at the time the act by which it was incorporated became a law, section 156 was a part of the public domain and had not been surveyed or sold; that by said act defendant was authorized to locate, build, equip, own, operate, and maintain a railway and telegraph line from, at, or near Fort Worth in a northerly direction through the state toward Denver City, Colo.; that, subsequent to the enactment of said law, the defendant surveyed its line from Fort Worth toward Denver City and across said section 156 and thereafter completed its line of railway, and ever since has continued to operate and use such railway; that under said act the defendant acquired a right of way 200 feet in width through such section for railway purposes, and any pur-

464

chase made by the original grantee of said section from the state was subject and inferior to the rights of the defendant to the use of a 200-foot strip in width across said section for railway purposes; that such 200-foot strip had theretofore been appropriated for this defendant by the Legislature, and the land commissioner was without authority to sell to the original grantee the land appropriated to the defendant by the Legislature; that the development of the country and the increase of the population thereof necessitates the use of all of said strip for right of way purposes, and the defendant continually uses portions thereof for railway purposes and now uses a large part of said 200-foot right of way for the operation of its railway; that it has never abandoned any of said land, and any of such strip that is not in use is due to the fact that the development of the country has not necessitated its use for railway purposes, but the defendant has at all times held and reserved said entire strip to be used for railway purposes when the conditions justify such use.

The case was submitted to the court without the intervention of a jury and judgment rendered that the title to the strip of land involved in this appeal be confirmed in the Fort Worth & Denver City Railway Company, from which judgment in behalf of the Fort Worth & Denver City Railway Company, the plaintiffs prosecute this appeal.

The appellants, by proper assignments, urge as error the action of the trial court in confirming the title of appellee to the use of the land for railway purposes, because: First, the land was not granted to appellee by the state of Texas; second, appellee failed to claim, take possession of, or appropriate said land for railway purposes; and, third, the testimony fails to show that the provisions of appellee's charter which constitute conditions precedent to its acquisition of the land were performed by it.

The record shows that the tract of land involved is located outside of a right of way 100 feet in width across said section, but is included and situated within a right of way 200 feet in width across said section; that on September 10, 1887, section 156, block 2, A. B. & M., in Potter county, Tex., was awarded by the commissioner of the general land office of the state to Frank Lester; that on September 24, 1887, Frank Lester conveyed said section to J. T. Holland; that on December 9, 1890, the state issued to J. T. Holland, assignee of Frank Lester, a patent conveying to J. T. Holland said section described as containing 640 acres of land; that by a regular chain of conveyances the appellants are the owners of the title acquired by Frank Lester and J. T. Holland from the state to the land in controversy; that in 1873, the Legislature passed "An Act To Incorporate the Fort Worth & Denver City Railway Company," the provisions of which, necessary to a disposition of this appeal, are:

"Section 1. Be it enacted by the Legislature of the State of Texas. That the following named persons (the names of whom are set out) be and they are hereby incorporated a body politic and corporate, under the name and style of the 'Fort Worth & Denver City Railway Company', under which name they shall have succession for the term of sixty years from and after the passage of this act, with the right to sue and be sued, plead and be impleaded, contract and be contracted with; to have and to hold, purchase and convey, both real and personal property," etc. Sp. Laws 1873, c. 208.

This act then provides that the capital stock of the Fort Worth & Denver City Railway Company shall be $10,000,000, divided into shares of $100 each; that each share shall be entitled to one vote; that the persons named as incorporators shall, within ninety days after the passage of the act, meet at Fort Worth, Tex., open books for subscription to the capital stock of the company, and when $250,000 have been subscribed in good faith and 5 per cent. thereof actually paid, the stockholders may proceed to the election of a board of directors and officers of the company; that, when the organization has been completed, as provided by the act, it shall be the duty of its president and secretary to send a certified copy of the proceedings to the secretary of the state of Texas to be filed in the archives of his office; that when the provisions of the act have been complied with, notice thereof shall be given by publication in the official journal published at Austin and in some newspaper in the city of Denver; that stock books may be held open for subscription to capital stock.

"Section 6. The said Fort Worth & Denver City Railway Company is hereby authorized and fully empowered to survey, locate, build, equip, own, control, manage, operate, and maintain a railway and telegraph line from some suitable point at or near Fort Worth, Tarrant County, Texas, forming a junction at said point with the Texas & Pacific Railway; thence, in a northwesterly direction, on the most practicable route through the State of Texas, in the direction of Denver City, Colorado, having in view the route best calculated to develop the mineral region of Northwestern Texas."

The act also provides the gauge of the railway.

"Section 8. That the right of way, to be to the extent of two hundred feet in width, is hereby granted to said railway company, through the public lands of Texas, and also the right to take and use, in the construction of said road, any timber or other material used in the construction of railways, found

and lying upon any of the public lands of this state."

The act then gives the corporation a right of eminent domain, grants to it sixteen sections of land of 640 acres each, for every mile of railway constructed and put in operation, with the provision that the certificates to said land shall be issued as the road is constructed, with other conditions imposed, stipulates that the first 25 miles shall be completed within three years and an additional 30 miles every two years thereafter until the road is completed through the state, and authorizes the issuance of bonds.

Section 14, in part, is: "Said Fort Worth & Denver City Railway Company shall not lease, rent or sell its road, or sell its franchises to, or purchase, or be merged in, or consolidated with any other parallel, connecting, or competing line of railroad in this State; and a violation of the provisions of this section shall forfeit all the charter rights and privileges of said company."

"Section 15. That within six months after the organization of the company incorporated by this act, it shall be the duty of said company to file with the Commissioner of the General Land Office of this State plats and maps showing the line upon which it is intended to construct said railroad."

The act of the Legislature, so far as this record reveals, is the only charter ever secured by the appellee from the state of Texas.

There is no testimony that a meeting was held in Fort Worth as directed, that stock books for subscriptions were opened, that any report of the proceedings was filed with the secretary of state or published in any newspaper, or that any plats or maps showing the line upon which the company intended to construct its railroad was filed with the commissioner of the general land office.

The testimony shows that by deed dated June 6, 1893, J. T. Holland and H. B. Sanborn, who had acquired the rights of Frank Lester, conveyed to the appellee a right of way over said section 156, in block 2, 100 feet wide, or 50 feet on each side of the center of appellee's track; that section 156 was platted as the Holland addition to the town of Amarillo, which plat was recorded in the patent records of Potter county on December 13, 1890; that said plat shows the location of appellee's railway across section 156; and that 100 feet on each side of said railway was reserved for railroad purposes. The testimony is insufficient to show that the appellee ever abandoned any rights acquired by it to a right of way across said section; that appellee has been paying taxes on the land in controversy since 1909; that in 1891 Amarillo had 400 or 500 people, and the country was very sparsely settled; that railroad traffic into and out of Amarillo has increased enormously in the last thirty years; that this section of the country has developed very rapidly, and a large amount of wheat and small grain is shipped annually from Amarillo.

The trial court found, in effect, that the appellee's railway tracks crossed section 156 and that said tracks were placed on said section about November, 1887, that, at the time the railway line was located on and across said section, it was public free school land, and that appellee became the owner and entitled to the possession of a strip of land 100 feet on each side of the center of its tracks.

The appellants' position is that, under the facts revealed by this record, the judgment of the trial court is without support and is contrary to the well-settled law, and to sustain their contention they cite and rely on Jamestown & Northern Ry. Co. v. Jones, 177 U. S. 125, 20 S. Ct. 568, 44 L. Ed. 698; Minneapolis, etc., Ry. Co. v. Doughty, 208 U. S. 251, 28 S. Ct. 291, 52 L. Ed. 474; Stalker v. Oregon Short Line Ry. Co., 225 U. S. 142, 32 S. Ct. 636, 56 L. Ed. 1027; and Washington & Idaho Ry. Co. v. Osborn, 160 U. S. 103, 16 S. Ct. 219, 40 L. Ed. 346. These decisions construe the rights of railway corporations under a general act of Congress passed in 1875, the provisions of which, that are material, are now found in sections 934 and 937 of title 43 of the U. S. Code (43 USCA §§ 934, 937).

Section 934 provides that "the right of way through the public lands of the United States is granted to any railroad company duly organized under the laws * * * which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road."

Section 937 reads, in part, as follows: "Any railroad company desiring to secure the benefits of sections 934 to 939, inclusive, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way."

The special act under which appellee asserts its rights, incorporated as a body politic and corporate the Fort Worth & Denver City Railway Company, gave it right of succession, with the privilege of suing and being sued, contracting and being contracted with, and to have and to hold real estate, and granted to said Fort Worth & Denver City

Railway Company a right of way across the public lands of the state of Texas to the extent of 200 feet in width. The only provision in said act stipulating for a forfeiture of appellee's charter rights and privileges is the prohibition in section 14 against leasing, renting or selling, purchasing, merging, or consolidating with any other parallel, connecting, or competing line of railroad. The charter of appellee names it as a specific grantee and the grant of a right of way to the extent of 200 feet across the public lands of Texas is without condition, except such as are implied that the railroad shall be constructed and used for railroad purposes.

In St. Joseph & Denver City R. Co. v. Matthew Baldwin, 103 U. S. 426, 429, 26 L. Ed. 578, the Supreme Court of the United States, in construing the Act Cong. July 23, 1866 (14 Stat. 210, 211), the sixth section of which reads: "And be it further enacted, That the right of way through the public lands be, and the same is hereby granted to said Saint Joseph and Denver City Railroad Company, its successors and assigns, for the construction of a railroad as proposed; and the right is hereby given to said corporation to take from the public lands adjacent to the line of said road material for the construction thereof. Said way is granted to said railroad to the extent of one hundred feet in width on each side of said road where it may pass through the public domain"—holds that "the grant of the right of way by the sixth section contains no reservations or exceptions. It is a present absolute grant, subject to no conditions except those necessarily implied, such as that the road shall be constructed and used for the purposes designed. * * * We see no reason, therefore, for not giving to the words of present grant with respect to the right of way the same construction which we should be compelled to give, according to our repeated decisions, to the grant of lands had no limitation been expressed. We are of opinion, therefore, that all persons acquiring any portion of the public lands, after the passage of the act in question, took the same subject to the right of way conferred by it for the proposed road."

In the case of Fort Worth & Denver City Railway Co. v. Southern Kansas Railway Co. of Texas, 151 S. W. 850, this court, in an opinion by Judge Hall, settled all the questions of law presented in this case against appellants.

The appellants' contentions relative to the law were again considered in the case of Fort Worth & Denver City Railway Co. v. Western Stockyards Co. et al. (Tex. Civ. App.) 151 S. W. 1172 (writ of error refused), by Judge Hall, and determined adversely to appellants.

We have carefully reviewed the holdings by this court in the opinions last cited, and believe that the law as therein announced is correct.

For additional authorities, see Stuart v. Union Pacific Railway Co., 227 U. S. 342, 33 S. Ct. 338, 57 L. Ed. 535; Barlow v. Northern Pacific Railway Co., 240 U. S. 484, 36 S. Ct. 456, 60 L. Ed. 760; Nielson v. Northern Pacific Railway Co. (C. C. A.) 184 F. 601; Missouri, K. & T. Ry. Co. v. Watson, 74 Kan. 494, 87 P. 687, 14 L. R. A. (N. S.) 592; Northern Pacific Ry. Co. v. Wadekamper, 70 Wash. 392, 126 P. 909; Northern Pacific Ry. Co. v. Aas, 20 N. D. 247, 126 N. W. 1016.

The judgment is affirmed.

HALL, C. J., not sitting.