WILKINSON ET AL., appellants, *v.* NORTHERN PACIFIC R. R. CO., respondent.

NORTHERN PACIFIC R. R. CO.— *Grant of right of way is absolute.*— The grant to the Northern Pacific Railroad Company of the right of way through the public lands, two hundred feet on each side of its track, is present and absolute, and subject to no conditions, except those necessarily implied, such as that the road shall be constructed and used for the purpose designed.

SAME— *Grant attaches to mineral lands — Priority of grant.*— The proviso in section 3 of the act incorporating such railroad, excepting mineral lands from the alternate sections of land granted to aid in the construction thereof, does not refer to the grant of the right of way contained in section 2. Such right of way may extend over and cover mineral lands of the United States. If, at the time the right of way attaches, such mineral lands are unoccupied, a subsequent location thereof, followed by a patent to the locators, is inferior to the right of way to the company, and must yield to the superior legal title, without a resort to a court of equity to set the patent aside.

*Appeal from Third District, Lewis and Clarke County.*

EDGERTON & WEED and I. D. MCCUTCHEON, for appellants.

This is an appeal from an order of the district court of the third judicial district, refusing the prayer of the petitioners, pursuant to section 6, ch. 217, first session of the XXXVIIIth congress, entitled "An act granting lands to aid in the construction, etc., of the Northern Pacific Railroad."

*First.* The act, as its title implies, relates to the granting of lands (in aid of the construction, etc.). These lands are divided into two classes: the first, mentioned in section 2, referring to the right of way; the second,

mentioned in section 3, relating to the lands to be sold, etc.

Taken as a broad proposition, covering the entire act, we contend that there is no difference between these two sections.

In the one case, provision is made, in case the requisite quantity of land, as specified in the act, cannot be obtained by the company, that other specified lands shall be given in lieu thereof; while in the other case, the company is required to pay damages, but is allowed to hold the land. See sec. 7, Circuit Court of the United States for the District of Oregon. Deady, J., in the case of *Hughes* v. *N. P. R. R. Co.*, holds that the act incorporating this company is a grant by a public to a private corporation, and must, therefore, be construed most strictly against the latter; and that no authority, right or privilege can be held to pass, unless the same is therein clearly expressed or plainly implied. 1 West Coast Rep. 21.

The United States has only the right of a proprietor, and in discussing this case we shall assume that the fact that the conveyance was by act of congress, instead of patent, does not alter the legal conclusions to be drawn therefrom. 1 West Coast Rep. 321, and cases there cited.

There is no denial of the fact that the petitioners had a government patent, conveying the fee-simple, and were in actual possession, and we contend that these facts alone would be sufficient, under any circumstances, to bring the petitioners within the meaning of section 7, and require the court to grant the relief prayed for.

The strongest claim that could be made by the defendant company would only show the patent to be voidable, and therefore good until set aside by the decree of some court of competent jurisdiction.

*Second.* The lands are, indisputably, mineral lands, within the meaning of the United States statute, and are, therefore, expressly exempt by the act itself. See further

proviso in the latter part of section 3; also, see Joint Resolution number 10, passed January 30, 1865, second session XXXVIIIth congress, which says, " No act shall be so construed as to embrace mineral lands, which in all cases shall be and are reserved exclusively to the United States."

Under no possible construction can it be made to appear that congress intended to sell the land of the United States for full value (which was done in the case at bar), and then allow the railroad company to appropriate the same without compensation, whether mineral land or otherwise; and in the case of mineral lands, it expressly reserves the same from the operation of the act in the act itself, and then, as if fearful there might be some possible misinterpretation of that express language, at the second session of the same congress, the joint resolution herein before referred to was passed, covering no other point, and seemingly for no other purpose than that of making doubly plain the particular construction contended for in this case.

In view of the undisputed facts presented by the record in this case, we are at a loss to understand how any doubt can be entertained as to the legal principles underlying this case; the only question being concerning their application.    See *Bagnell* v. *Broderick*, 13 Pet. 436; *Biddle Boggs* v. *Merced M. Co.* 14 Cal. 344; 3 Kent's Com. 378.

SANDERS & CULLEN, for respondent.

The question involved in this case is whether the petitioners are entitled to compensation from the Northern Pacific Railroad Company for so much of their mining claim as falls upon the right of way of the defendant; the act granting the right of way being dated July 2, 1864.

The defendant claims that the petitioners are entitled to no compensation, because the grant to it of the right

of way was anterior to any interest acquired by the petitioners or their grantors, and that therefore they took the mining claim subject to the interest of defendant; and in support of this proposition we refer the court to *Baldwin* v. *St. J. & D. R. R. Co.* 103 U. S. 426; *Doran et al.* v. *Cent. Pac. R. R. Co.* 24 Cal. 245; *R. R. Co.* v. *Tevis*, 41 Cal. 493; *Whitney* v. *Frisbie*, 9 Wall. 187; *Davis* v. *East Tenn. & Georgia R. R. Co.* 1 Sneed's Reports, p. 94, quoted in Lacy's Railroad Digest, vol. I, p. 254; *R. R. Co.* v. *State*, 3 Ind. 421.

There are two distinct and separate grants in the act of incorporation, for two distinct purposes, having different objects and motives, and they cannot be commingled and confused; one is the grant of a right of way for a public highway across the public lands from Lake Superior to Puget Sound, and sections 2 and 7 refer thereto; the other is a grant of public lands to enable the company to construct the road, which grant was a grant *in præsenti*, and, unless expressly limited by the words thereof, took effect July 2, 1864. There is nothing in the grant of the right of way limiting its taking effect, and, therefore, as to the right of way, it did take effect July 2, 1864. There is no exception in the sections referring to the right of way of mineral lands; and, therefore, the grant included them, and the single proposition is whether, July 2, 1864, this right of way belonged to the United States, without any incumbrances except the Indian title, which in this section the government provided should not interfere with the grant, but that it would extinguish the same.

The grant of lands to aid in the construction of the road is subject to numerous exceptions, expressly made. For instance, mineral lands are excepted, that, after the passage of the bill, and before the preliminary location of the road had been reserved, sold, granted, appropriated, pre-empted or occupied by homestead settlers, and as to them lieu lands were given the company. No lieu

lands, however, were given the company for any right of way owned by private individuals prior to July 2, 1864. Section 7 refers conclusively to such lands needed for a right of way as had become private property prior to July 2, 1864.

Having regard to the language of the act and its division into sections, as well as to the nature and objects of the grants themselves, the exception of mineral lands, as well as the act of congress of January 30, 1865 (vol. 13, U. S. Statutes at Large, p. 567), refer exclusively to lands granted to aid in the construction of the road, alternate sections, and not to the right of way.

It would be little less than an absurdity to interpret this statute as excluding mineral lands from the grant of the right of way, and giving lieu lands therefor. Lieu lands would be good for nothing as a right of way; the subdivision of the survey would not permit of an absolute equivalent; there could be no equivalent in value; and not even mineral lands could be permitted to stand in the way of the construction of a public highway of this character.

The reason and policy of the law, vigorously defined by Mr. Justice Field in *R. R. Co.* v. *Baldwin, supra,* forbid any such interpretation, and we are therefore irresistibly led to the conclusion that there was no error committed by the court below in refusing the petitioners the order they asked; that the court would not do a vain thing, nor subject the defendant to costs in proceedings which, when consummated, could not subserve any lawful purpose.

Respondent has cited in its brief two cases decided by the supreme court of California, viz., *R. R. Co.* v. *Tevis,* 41 Cal. 493, which simply involves a question concerning agricultural lands, and has no application to this case; and the other, viz., *Doran* v. *Cent. P. R. R. Co.* 24 Cal. 245, was a case decided in 1864, and under the then existing statutes the claimant had no right to even the possession

of the land in controversy as against the United States or its grantees, which fact was specifically mentioned by the court in its decision of the case, as a reason why, even if attempted, the claimants could not convey any title to the company, and therefore were not entitled to any compensation.

In the case of *R. R. Co.* v. *Baldwin,* 13 Otto, 426, cited by respondent's counsel, the lands in controversy were agricultural, and it does not appear whether patent had issued therefor; and even under those circumstances the chief justice dissented; and Justice Field, who delivered the opinion, in writing an opinion for the same court in the case of *Missouri, Kansas & Texas R'y Co.* v. *Kansas Pacific R'y Co.* 8 Otto, 498, in discussing a similar grant, uses the following language: "The grant made was in the nature of a float, and the reservation excluded only specific tracts, to which certain incidents had attached before the grant had become definite, or which had been specifically withheld from sale for public uses; and tracts having a peculiar character, such as swamp lands and mineral lands, the sale of which was then against the general policy of the government." We contend that the same line of reasoning will apply to the case at bar, which, being mineral land, comes specifically within the last exception named by Justice Field as above quoted.   We confidently assert that the cases cited by respondents could have no application to the question involved in the case at bar, and that this question has not been settled by the courts.   With the general proposition contained in the brief of respondent's counsel, that the act referred to contains two distinct and separate grounds, we make no question.   In the case of the land grant proper, the government has seen fit, not only to grant a certain number of sections, but has also guarantied the quantity, by providing substitute lands.

In the case of the right of way, there is no guaranty whatever of a like nature.   It. is true, as stated by re-

spondent's counsel, that there are no exceptions or reservations; in other words, the grant is unconditional. In this respect the grant is not different from all other acts or declarations of state or municipal authorities, by which the right of eminent domain is exercised. But from these admissions it does not follow that we concede that private property can be taken for public use without compensation. In fact, the right of compensation is recognized and distinctly provided for in section 7 of the act of July 2, 1864.

The result indicated by respondent's counsel, that if the position of appellants is correct, and they are entitled to compensation, it could only be done by a construction of the statute which would hazard the prosecution and completion of a great public enterprise like the Northern Pacific Railroad, is absurd.

Appellants contend that the act is a mere declaration on the part of the sovereignty, that the use is a public one, and therefore subjects both public and private property to condemnation; the only difference being that the public property may be taken without compensation, and private property never.

COBURN, J. The plaintiffs, Thomas Wilkinson and Samuel Dempster, who are the appellants, filed in the district court their petition for the appointment of commissioners to appraise the value of the premises described therein, which have been taken under the grant of the right of way to the defendant for a railroad track.

The defendant, the railroad company, answered; and the cause was submitted upon the petition and answer to the court below, and thereupon the prayer was denied and the petition dismissed. From this denial and dismissal of the petition the plaintiffs appealed to this court.

The petition shows that the plaintiffs are seized in fee as tenants in common of certain mineral lands particularly described. That said lands were located in the year

1868, and claimed under and in pursuance of the laws of the United States and of this territory and of the local rules and regulations of mines and miners, at a time when said lands formed a part of the public domain of the United States. That these lands were held, worked and claimed as placer mining grounds, under and by virtue of the above authority, until the 20th day of February, 1882, on which day the petitioners and Richard Rule and Conrad Geiger, as proprietors, applied for a patent to said lands; paid for them at the rate of $2.50 an acre, complying in all respects with statutes as to such entries. On the 31st day of May, 1883, a patent was issued to them for the lands.

Since 1868, the petitioners and their grantors have held peaceable possession of the lands and now own them, having received a conveyance from Rule and Geiger for their interest. That valuable mining ditches belonging to plaintiffs have been made on the lands, necessary to the business of mining thereon. That a large portion of these lands have upon them placer mines of gold unworked, which, with the water appertaining to the premises and available for mining, will yield large quantities of gold of great value.

That the Northern Pacific Railroad Company, the defendant, did, on or about the month of April, 1882, enter upon and construct its road along and over these mining lands, and cut and tore the ground and water ditches in such a manner as to render a large portion thereof entirely unfit for use as mining ground, and made it impossible for the petitioners to take gold therefrom. That the length of said track along and across said ground is about one and a half miles; that the defendant claims an easement upon and over said land for a distance of two hundred feet on each side of said track for said distance, by virtue of their act of incorporation.

That these lands are, and were at the time of the entry, private lands, and were, and now are, mineral lands

within the meaning of the act incorporating said company and of the laws of the United States.

That the petitioners and defendant have not been able to agree as to the value of the premises so taken. That by reason of this taking by defendant, they have been damaged $15,000.

The prayer of the petition is for the appraisement, and the appointment of appraisers of the land so taken for the right of way, pursuant to section 7 of the charter.

The answer denied that the defendant claimed or desired the premises in fee, but only claimed an easement therein and right of way thereon, as granted by section 2 of the act incorporating this company, and averred that the right and title thereto antedated the rights of the petitioners, the date thereof being the 2d day of July, 1864; that petitioners' right is subordinated to that of the defendant, who is entitled to the same without compensation to the petitioners. The answer closes with a prayer that the petition be dismissed, and defendant moved to dismiss the petition upon the facts and law appearing in the same and the answer, which motion the court sustained and dismissed the petition. From this order the petitioners appeal.

The second section of the charter of the Northern Pacific Railroad Company grants the right of way through the public lands, two hundred feet in width on each side of the track. The seventh section provides for the entering upon, purchasing, taking and holding, and condemnation of any land owned by private individuals for the right of way. Provision is made for the appointment of commissioners to assess damages in case the owners of land cannot agree as to the same with the company.

The petitioners, having a patent from the United States, claim damages under this seventh section.

The supreme court of the United States has decided that a similar grant of the right of way is present and absolute, subject to no conditions except those necessarily

implied, such as that the road shall be constructed and used for the purpose designed; and that there is nothing in the policy of the government with respect to the public lands which would call for any qualification of the terms, inasmuch as the grant of the right of way contains no reservations or exceptions such as are found in the sections of the charter granting land in aid of the construction of the road. See *Railroad Company* v. *Baldwin*, 103 U. S. 426. See, also, *Western Pac. R. R. Co.* v. *Tevis*, 41 Cal. 493.

The appellants take the position that they have the legal title, a patent, which is voidable only until set aside by a court of competent jurisdiction, and that having this title, they have a right to the appointment of commissioners. But the respondent has also a legal title of an older date, which is found in the act of congress making the grant, and the inferior must yield to the superior legal title, without a resort to a court of equity to set the inferior one aside. It is not, therefore, necessary that the railroad company should call to its aid, in order to secure the right of way through the petitioners' land, the exercise of the power of eminent domain, since, at least four years before they made any claim to the land in question, it had been granted unconditionally to the defendant.

The third section of the charter, which grants lands in aid of the construction of the railroad, is as follows: "That there be and is hereby granted to the Northern Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific coast, and to secure the safe and speedy transportation of the mails, troops, munitions of war and public stores over the route of said line of railway, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections of land per mile on each side of said railroad, whenever it passes through any state,

and whenever, on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of said road is definitely fixed and a plat thereof filed in the office of the commissioner of the general land office, and whenever, prior to said time, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections. Provided: That, if said route shall be found upon the line of any other railroad route, to aid in the construction of which lands have been heretofore granted by the United States, as far as the routes are upon the same general line, the amount of land heretofore granted by this act. Provided, further: That the railroad company receiving the previous grant of land may assign their interest to said Northern Pacific Railroad Company, or may consolidate, confederate and associate with said company upon the terms named in the first section of this act. Provided, further: That all mineral lands be, and the same are hereby, excluded from the operation of this act, and in lieu thereof a like quantity of unoccupied and unappropriated agricultural lands, in odd numbered sections, nearest to the line of said road, may be selected as above provided; and provided, further, that the word "mineral," when it occurs in this act, shall not be held to include iron or coal; and provided, further, that no money shall be drawn from the treasury of the United States to aid in the construction of the said Northern Pacific Railroad."

The mineral lands excluded from the operation of this act are evidently not those covered by the right of way, as nothing could possibly be given in lieu · of any lands

which might be needed for such a purpose. And it would be destructive of the rights of the railroad company, if mining claims could at any time be located and worked upon the track and land covered by the right of way. See *Doran* v. *Cent. Pac. R. R. Co.* 24 Cal. 246. The joint resolution of congress of January 30, 1865, declaring that no act shall be so construed as to embrace mineral lands, which in all cases shall be, and are hereby, reserved exclusively to the United States, cannot be considered as a reservation of mineral lands from the operation of grants of the right of way, such as the one in question. A reservation of that character would annihilate the franchise and annul the operation of the entire act of congress granting the charter. The operations of mining, and the business of railroads, cannot be conducted at the same time upon the same ground, and a reservation of such a character would beget a conflict of rights and a confusion of interests, not in contemplation of intelligent legislative action.

Judgment affirmed.