ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY v. BUDD.

Opinion delivered March 16, 1914.

1. TITLE—ENTRY AND PATENT—ACT OF CONGRESS—PRIORITY.—Appellee claimed title to land through his grantor, who claimed title under a homestead entry made in 1877, and completed by a patent from the United States Government; *held*, his claim was superior to that of a railroad company to the same land under an act of Congress in 1875, granting the railway a right-of-way through public lands, but where the railway company failed to file its survey and map with the Secretary of the Interior until 1881. (Page 108.)

2. TITLE—DEED—EXCEPTION, EFFECT OF.—Where the original homesteader of certain lands, conveyed the same with exceptions, as to

the right-of-way of a railroad over the same, without specifying any particular width of the right-of-way, he will be held merely to recognize the railroad's right to occupy a portion of the land, and not to have conceded the right to the railway of a strip of any specified. width. (Page 109.)

3. Title—right-of-way—filing map of survey—limitations—estoppel.—The filing with the Secretary of the Interior of the United States of the map of survey of its right-of-way over public lands by a railroad company, is not such an assertion of title to the land as amounts to an occupancy of the same, so as to ripen into title by limitations, nor will it estop a grantee of a prior entryman from contesting the validity of the railway company's claim. (Page 110.)

4. Title—conflicting claims—priority—estoppel.—The lessee of land from a railroad company, who subsequently bought the land leased from a third person who claimed title by reason of an entry under the homestead laws, is not estopped to dispute the claim of the railroad company. (Page 110.)

Appeal from Washington Circuit Court; *J. S. Maples*, Judge; affirmed.

*W. F. Evans* and *B. R. Davidson*, for appellant.

1. If the railroad company in building its road across the tract of land in question, treated it as Government land, made a survey across the same and filed its map and articles of association with the Secretary of the Interior, filed its map in the General Land Office and in the local land office before the homesteader had obtained a patent for it, made no effort to purchase the right-of-way from the homesteader, or to condemn a right-of-way across the same, but treated it as a location and grant of right-of-way from the Government, and the homesteader made no objection and took no action to obtain damages for the same, and the railroad company was permitted to remain in possession of same for more than thirty years, then the United States statute regulating the width of the right-of-way would control, and appellant would be entitled to a right-of-way 200 feet wide. 1 Rev. Stat. U. S. (2 ed.) 91, §§ 1, 4; 172 U. S. 171-184; 63 Fed. 417-420; 50 Ark. 250; 51 Ark. 237; *Id.* 491.

Brown, who was the only person who could controvert the right of the railroad company to a right-of-way

100 feet wide on each side of its line, not only did not do so, but on the contrary recognized it when in executing his deed he conveyed subject to this right-of-way.  40 S. W. 104.

2.   Appellee in purchasing that portion of the forty-acre tract lying west of the right-of-way, recognized the railroad company as owning such right-of-way, and can claim title only to that portion of the tract lying outside of the right-of-way.

And he, having accepted a lease from appellant for a period of years, for the portion of the right-of-way he now occupies, and having entered upon and used the same under said lease, can not now claim ownership thereof.   13 Ark. 385; 15 Ark. 102; 28 Ark. 153; 43 Ark. 28; 45 Ark. 177; 53 Ark. 532.

*J. E. London* and *H. L. Pearson,* for appellee.

The United States can not grant to a railroad company a right-of-way across any public lands to which any person has a valid claim, whether such claim afterward ripens into title or not.   92 U. S. 761; 104 U. S. 329; 1 Pac. 319; 27 N. W. 69; 15 N. W. 317.   A grant to a railroad company by an act of Congress of a right-of-way over public lands, does not include lands which at the time of the grant are subject to an existing uncancelled homestead entry.   26 Utah, 179; 72 Pac. 931; 120 N. W. 875; 76 N. W. 227.

McCulloch, C. J.   This controversy involves the title and right of occupancy of a strip of land, 100 feet wide, constituting a part of northeast quarter of section 25, township 14 north, range 30 west, runing parallel with appellant's railroad and claimed as a part of the right-of-way.

Appellee Budd is the owner of that part of said quarter section which embraces the strip in controversy, and occupies it, claiming ownership.

This is an action instituted by appellant against him to recover possession.

The case was tried before the court sitting as a jury upon an agreed statement, in writing, of the facts, and other testimony, oral and documentary.

Appellant's predecessor, the Missouri, Arkansas & Southern Railway Company, was incorporated in the year 1881, and filed its map of survey, copy of articles of incorporation, etc., with the Secretary of the Interior of the United States. It claims the strip of land in controversy under the act of Congress of March 3, 1875, granting a right-of-way through the public lands 100 feet wide on either side of the center line of the railroad.

The quarter-section of land in controversy was entered as a homestead by one James W. Brown in the year 1877. He filed his homestead claim in the United States Land Office and subsequently complied with the homestead law and made final proof and received his patent in the year 1883. Appellee claims title to his part of said quarter-section under mesne conveyances from Brown and now asserts title and right of occupancy of the strip in controversy under the homestead entry of Brown.

The trial court found that appellant was entiled to a strip of land 100 feet wide, being fifty feet on each side of the center of the track, but refused to find in favor of appellant, as requested, that the latter was entitled to a right-of-way of 200 feet, being 100 feet in width on each side of the center of the track.

The first question presented relates to the priority of the conflicting claims, whether the appellant is entitled to the right-of-way under the act of March 3, 1875, or whether the homestead entry of Brown was superior.

It seems clear, under the decisions of the Supreme Court of the United States, that the Brown entry is superior and that appellee succeeded to Brown's rights. The act of March 3, 1875, as before stated, granted right-of-way through "public lands" 100 feet wide on either side of the center line of the railroad.

In *Newhall* v. *Sanger*, 92 U. S. 761, the Supreme Court of the United States said that "the words 'public

lands' are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws.''

In *Hastings, etc., R. R. Co.* v. *Whitney,* 132 U. S. 357, the court, after referring to prior decisions on the subject, said:

''In the light of these decisions, the almost uniform practice of the department has been to regard land, upon which an entry of record valid upon its face has been made, as appropriated and withdrawn from subsequent homestead entry, pre-emption, settlement, sale or grant until the original entry be cancelled or declared forfeited; in which case the land reverts to the Government as part of the public domain, and becomes again subject to entry under the land laws.''

See also *Bardon* v. *Northern Pacific R. R. Co.,* 145 U. S. 535, and *Whitney* v. *Taylor,* 158 U. S. 85, which announce principles that necessarily subordinate the claim of appellant to the prior homestead entry of the land in controversy.

It is contended, however, that the homesteader, J. W. Brown, by his conduct recognized the validity of the grant to the railroad company and that appellee, as his successor, will not be heard to dispute it.

Brown conveyed the land by deed reciting in the description in it an exception as to the right-of-way of the railroad company, but specified no particular width. This was merely a recognition of the railroad's occupancy of some portion of the land, but not a concession of the right to hold a strip of any specified width. The filing of the map of the survey was not such an assertion of title by the railroad company as amounted to an occupancy so as to ripen into title by limitation or to estop subsequent grantees of the entryman from contesting the validity of appellant's claim. It is a question to be determined from all the proof as to how much of the land the railroad company had acquired title to by limitation, and the court by its judgment found that it was

entitled to hold fifty feet on each side of the center of the track.

The question whether the finding of occupancy to that extent is justified by the evidence we need not determine, for appellee acquiesced in the judgment and has not appealed from it.

It is also contended that appellee is estopped to dispute the claim of the railroad company by accepting a lease from the company of the strip of land now in controversy.

The testimony shows that prior to the time that appellee purchased the land from Brown, he accepted a lease from appellant, but subsequently bought the land and repudiated the lease, refusing to pay the annual rental price. There is no element of estoppel in the case for the reason that appellee was not claiming title to the land at the time he accepted the lease, and for the further reason that the rights of appellant have not been prejudiced nor its status with respect to the lands changed by reason of appellee's acceptance of the lease.

Our conclusion is that the finding of the trial court was supported by the evidence and the judgment is therefore affirmed.