STEPAN ET AL., RESPONDENTS, *v.* NORTHERN PACIFIC
RAILWAY CO., APPELLANT.

(No. 6,225.)

(Submitted January 9, 1928. Decided January 21, 1928.)

[263 Pac. 425.]

*Trespass—Public Lands—Grant of Railroad Right of Way—*
*Nature of Grant — Patent to Mining Location Embracing*
*Portion of Grant Inferior to Grant, When.*

Public Lands—Railroad Rights of Way—Nature of Grant.
   1. The grant of a 200-foot right of way for railroad purposes
through vacant public lands made by Congress by the Act of
March 3, 1875 (18 U. S. Stats. at Large, 482), on condition that
any railroad desiring to secure the benefits of the Act comply with
certain conditions, is one *in praesenti*, differing only from an abso-
lute grant in that the thing granted was indefinite and the name
of the grantee unknown, but on compliance with the requirements
of the Act, a railroad company became a grantee as specifically
and definitely as if it had been named in the Act, the grant hav-
ing the effect of a patent to the land granted for the purposes
named in it.

Same.
   2. The provision of section 4 of the Act of 1875 above that after
a railroad right of way has attached, the lands over which it
passes shall be disposed of "subject to such right of way," refers
to that portion of a legal subdivision over which the right of
way passes, lying outside the lines of the right of way, the right
of way being granted under an implied condition of reverter in
the event the railway company cease to use the land for the pur-
pose for which granted, which may be granted to the person to
whom the remainder of the subdivision is patented.

Same—Railroad Right of Way—Grant Conclusive Determination of
Quantity of Land Necessary for Railway Purposes.
   3. The grant by Congress of a railroad right of way over un-
appropriated public lands of the United States is not an easement;
it is a qualified or limited fee, with the attributes of a fee, i. e.,
perpetuity and exclusive use and possession; the grant itself is a
conclusive legislative determination of the reasonable and neces-
sary quantity of land for railway purposes to the full width of
the right of way granted, the company not being limited to so
much thereof as it occupies or what is actually necessary for the
use for which the grant was made.

Same—Locating Mining Claim Embracing Portion of Railroad Right
of Way—What not Trespass on Part of Railway Company.
   4. Plaintiffs, long after defendant railway company had acquired
title to its right of way over public lands of the United States

---

   1. See 22 R. C. L. 289.

under congressional grant, discovered a quartz lode near the right of way and sank a shaft within forty feet of the center line of the track and subsequently obtained patent to their claim, the exterior boundaries of which were within the 100-foot strip on one side of and paralleling the track. They abandoned the shaft and the railway company filled it in. *Held*, in an action for damages for trespass, that the finding of the trial court that the full width of the right of way was not necessary for railroad purposes was immaterial (see par. 3, above) and did not support the judgment in favor of plaintiffs.

Same—Grant of Railroad Right of Way—Subsequent Patent to Mining Location Embracing Portion of Right of Way Inferior to Right of Way Grant.

5. A patent to a mining claim covering a portion of a railroad right of way which had attached years prior to issuance of the patent was inferior to the older title and inoperative so far as it included land validly acquired by the railway company theretofore.

---

[1] Appeal and Error, 4 C. J., sec. 2855, p. 883, n. 33. Public Lands, 32 Cyc., p. 988, n. 95, p. 990, n. 14.
[2] Public Lands, 32 Cyc., p. 993, n. 44.
[3, 4] Public Lands, 32 Cyc., p. 994, n. 50.
[5] Public Lands, 32 Cyc., p. 992, n. 35, p. 996, n. 76.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

ACTION by John Stepan and others against the Northern Pacific Railway Company. Judgment for plaintiffs and defendant appeals. Reversed and remanded with direction to enter judgment for defendant.

*Messrs. Walker & Walker* and *Messrs. Gunn, Rasch & Hall*, for Appellant, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

Under sections 4291–4294, United States Compiled Statutes of 1916, when a map showing the definite location of a railway line over such lands has been approved by the secretary of the interior, and the road constructed in accordance therewith, it vests title to such right of way in such railroad and its successors in interest to the extent of 100 feet on each side of such line. (*Van Dyke* v. *Arizona Eastern Ry. Co.*, 248 U. S. 49, 63 L. Ed. 119, 39 Sup. Ct. Rep. 29 [see, also, Rose's U. S. Notes]; *Stalker* v. *Oregon Short Line*, 225 U. S. 142,

56 L. Ed. 1027, 32 Sup. Ct. Rep. 636; *Oregon Trunk Line* v. *Deschutes R. Co.,* 172 Fed. 738; *Hamilton* v. *Spokane & P. Ry. Co.,* 3 Idaho, 164, 28 Pac. 408; *Pierce* v. *Chicago, M. & St. P. Ry. Co.,* 52 Mont. 110, 156 Pac. 127.)

The failure of the land office to include in a patent to land over which a right of way has been granted to a railroad by this Act an express reservation of such right of way from the land described in said patent does not impair the company's right or title to the right of way. (*Southern Pacific Ry. Co.* v. *City of Reno,* 257 Fed. 450; *Rio Grande Western Ry. Co.* v. *Stringham,* 38 Utah, 113, 110 Pac. 868; affirmed in 239 U. S. 44, 60 L. Ed. 136, 36 Sup. Ct. Rep. 5.)

A congressional grant of a right of way through public lands to a railroad includes a right of way over mineral lands that were public lands at the time the map of definite location was filed. (32 Cyc. 992; *Wilkinson* v. *Northern Pac. Ry. Co.,* 5 Mont. 538, 6 Pac. 349; *Bybee* v. *Oregon & Cal. R. Co.,* 139 U. S. 663, 35 L. Ed. 305, 11 Sup. Ct. Rep. 641 [see, also, Rose's U. S. Notes]; *Bonner* v. *Rio Grande S. R. Co.,* 31 Colo. 446, 72 Pac. 1065; *Rio Grande Western Ry. Co.* v. *Stringham,* 38 Utah, 113, 110 Pac. 868; affirmed in 239 U. S. 44, 60 L. Ed. 136, 36 Sup. Ct. Rep. 5.)

"Title or rights acquired in public lands after a right of way has vested in a railway company under a statutory grant are subject to such right of way." (32 Cyc. 996; *Smith* v. *Northern Pac. Ry. Co.,* 50 Mont. 539, 148 Pac. 393; *Stuart* v. *Union Pac. Ry. Co.,* 227 U. S. 342, 57 L. Ed. 535, 33 Sup. Ct. Rep. 338; *Northern Pac. Ry. Co.* v. *Hasse,* 197 U. S. 9, 49 L. Ed. 642, 25 Sup. Ct. Rep. 305.) The estate acquired under such a grant of right of way "is more than a mere easement, and is a base, qualified or limited fee, giving the right to the exclusive possession and use of the land for the purposes contemplated by the law." (32 Cyc. 993; *Northern Pac. Ry. Co.* v. *Hasse,* 197 U. S. 9, 49 L. Ed. 642, 25 Sup. Ct. Rep. 305.)

The rights under this grant of right of way, as defined by the supreme court in the *Stringham Case,* supra, were the same, so

long as the right of way was not abandoned, as the rights of an individual owner of a fee-simple title in any tract of real estate. It was a "fee-simple absolute" except on one condition, that is, that it would revert to the government if the grantee or its successors ceased to use the land for a right of way. The evidence shows that the right of way was and is still being used, so the one condition upon which it would cease to be a fee simple absolute has never arisen and the grant has at all times carried "the incidents and remedies usually attending the fee."

"The grant is a conclusive legislative determination of the reasonable and necessary quantity of land to be dedicated to this public use. * * * The company may at some time want to use more land for side-tracks or other purposes, and is entitled to have the land clear and unobstructed whenever it shall have occasion to do so." (*Burton* v. *Laughrey,* 18 Mont. 43, 44 Pac. 406.)

The plaintiffs had no right to sink their shaft upon this right of way and were trespassers in doing so.

*Mr. H. D. Carmichael* and *Messrs. Kremer, Sanders & Kremer,* for Respondents, submitted a brief; *Mr. Carmichael* argued the cause orally.

It is quite apparent that Congress in granting to railway companies a 200-foot right of way contemplated that there was some title left in the United States government, which the United States could dispose of. This is shown by the language of the fourth section wherein the court will note it is provided that "Thereafter all such lands over which such a right of way shall pass shall be disposed of subject to such right of way."

John Stepan, by virtue of the United States patent to the "Little Johnnie Lode Mining Claim" acquired an absolute fee to the ground lying within the boundaries of the "Little Johnnie Lode Mining Claim," subject only to the railroad company's right of way across the said claim and their right

to use the surface of said mining claim to the exclusion of everyone, providing the surface was used to facilitate the operations of or was used for railroad purposes.

That the appellant company is the owner of the limited fee, but not the absolute fee, to the 200-foot right of way has been adjudicated many times and is well settled. (*Rio Grande Western R. Co.* v. *Stringham,* 38 Utah, 113, 110 Pac. 868; affirmed, 239 U. S. 44, 60 L. Ed. 136, 36 Sup. Ct. Rep. 5 [see, also, Rose's U. S. Notes].)

In the case of the *Northern Pac. Ry. Co.* v. *Townsend,* 190 U. S. 267, 47 L. Ed. 1044, 23 Sup. Ct. Rep. 671, it is said: "The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted." (*Bybee* v. *Oregon & California R. Co.,* 139 U. S. 663, 35 L. Ed. 305, 11 Sup. Ct. Rep. 641; *Doran* v. *Central Pac. R. R. Co.,* 24 Cal. 245; *Oregon Short Line R. Co.* v. *Stalker,* 14 Idaho, 362, 94 Pac. 56; affirmed in *Stalker* v. *Oregon Short Line R. Co.,* 225 U. S. 142, 56 L. Ed. 1027, 32 Sup. Ct. Rep. 636; *Oregon Short Line R. Co.* v. *Quigley,* 10 Idaho, 770, 80 Pac. 401.) The supreme court of this state in the case of *Smith* v. *Northern Pac. R. R. Co.,* 50 Mont. 539, 148 Pac. 393, has upheld the theory that the grant to the railroad company carries with it the exclusive possession of the lands within the right of way for necessary railroad purposes.

Respondents in the case at bar admit that the railroad company has the right to use the surface of the "Little Johnnie Lode Mining Claim" to the exclusion of everyone, providing that the use of that particular ground is necessary to aid or facilitate the company in the carrying on of its railroad business. On the other hand, respondents contend that they have the right to sink a shaft on their patented mining claim and

mine ores therefrom so long as they do not interfere or hinder the defendant company in its railroad operations. There is not even a suggestion in the case at bar, by the appellants, that the respondents' mining operations in any manner hindered its railroad operations. Here we find the appellant company without necessity entering on the patented mining claim of the respondents herein and constructing a wagon road, which was absolutely unnecessary and which caused injury and damage to the respondents' property.

The appellant company has failed to show that the construction of the "Little Johnnie Cut-off Road" was necessary to facilitate railroad operations or was constructed for railroad purposes. The respondents claiming title under a valid United States patent regularly issued are the owners of the absolute fee of the land lying within the boundaries of the "Little Johnnie Lode Mining Claim," subject, of course, to the appellant company's right to the use of the surface for necessary railroad purposes and as such owners are entitled to recover from the appellant company for the damage to their patented mining claim caused by the unnecessary construction of the "Little Johnnie Cut-off Road."

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment, in favor of the plaintiffs, for damages for alleged trespass upon a patented mining claim.

The facts as they appear from the pleadings, the proof and the findings of the court, sitting without a jury, are substantially as follows: In the year 1883 the Utah & Northern Railway Company, having complied with the requirements of the law relative to rights of way, constructed a railway line extending from the city of Butte in a northerly direction. Where this line approached the quarter-section line in the north half of section 7 in township 3, north of range 5 west, it passed along a hillside, the slope of which was from west to east. To the south of this hillside there existed a large

coulee which was spanned by the railroad by a wooden trestle some 300 feet long. After completing the line, the initial company leased it to the Montana Union Railway Company for a term of 999 years, and, in 1898, this latter company assigned its lease · to the defendant company, which has continually maintained operations over the line ever since.

The county of Silver Bow had, during all of the times herein mentioned, maintained a public highway from Meaderville to Dixie Gulch, approximately paralleling the track, which crossed the coulee mentioned at a point more than 100 feet east of the track, from which point the county, up to 1922, maintained a branch road diverging from the Dixie Gulch road at right angles, thence running in a westerly direction under the trestle, and to the Butte and Superior mine.

In 1905 the plaintiffs discovered a quartz lode or vein by sinking a shaft on the hillside above mentioned, about 1,000 feet north of the coulee, and within forty feet of the center line of the railroad track. They continued to work in the shaft until 1908, when they applied for, and were issued, a patent for their claim under the name of the "Little Johnnie lode," the exterior boundaries of which are wholly within the 100-foot strip east of, and paralleling, the railroad track. After receiving the patent, the plaintiffs abandoned work on the claim, and have since resided elsewhere. The shaft caved, and became partially filled in prior to 1921.

In 1922 the defendant company determined to fill in the coulee mentioned above, and thus eliminate the repair and maintenance of the trestle, which change would necessitate changing the position of the Butte and Superior mine road, and, accordingly, the company secured permission from the board of county commissioners of Silver Bow county to make the change. Pursuant to the agreement reached, a planked crossing was constructed over the track, extending to within ten feet of the southwest corner of the Little Johnnie lode, and a new road was constructed from the old Butte and Superior road west of the track to and across the crossing, and from

there extending in an arc to the southeast, and thence south, so that it connected with the Dixie Gulch road at an acute angle.

When the new road was completed, the company called upon the county commissioners to accept it and abandon the old road under the trestle, and the board authorized one of the commissioners and the county surveyor to inspect the new road for this purpose. The only conflict in the evidence arose over what took place at the time of the inspection. The engineer in charge testified that the county commissioner demanded that, before the county accepted the new road, the company should construct a branch road from the crossing north as well as south, thus obviating the necessity of traveling in the opposite direction for a short distance, and making a dangerous turn into the Dixie Gulch road in going from the Butte and Superior mine to Dixie Gulch, and in this the engineer was corroborated by the county surveyor, while the commissioner testified on direct examination that he did not remember making such a demand, and on cross-examination stated that he did not make the demand.

There were few people living in Dixie Gulch, and the branch road north is used only by employees of the Butte and Superior. Whether the demand was made or not, the company proceeded to construct the branch, thus completing a Y similar to a railroad Y in a track, and in doing so filled in, and passed directly over the shaft on the Little Johnnie lode.

The damage alleged by plaintiffs is the destruction of their shaft, and it was agreed on the trial that, if the plaintiffs prevailed, they were entitled to judgment in the sum of $1,000.

1. The court found that construction of the branch road was not authorized by the county, and, as the finding is based upon conflicting evidence given by witnesses before the court, we will not disturb that finding.

The court further found that the branch was not necessary, but merely a convenience to the traveling public; that it could have been constructed a few feet either way from the shaft,

and thus filling in avoided; and that the construction of the branch was not necessary to any legitimate railroad purpose, or essential to the operation of the railroad.

On these findings the court concluded, as a matter of law, that the defendant company was guilty of trespass, and accordingly entered the judgment from which this appeal is taken.

The question for our determination is whether, giving full credit and effect to the findings of the trial court, its conclusions are justified by those findings, and, consequently, whether the judgment is supported by the evidence. The solution of this question necessitates a determination of the rights of the respective parties hereto under their grants from the government.

2. By the Act of March 3, 1875, Congress granted a right [1] of way, through "public lands," to any railroad company filing with the secretary of the interior its articles of incorporation and proof of due organization thereunder, to the extent of 100 feet on each side of the central line of its road (18 U. S. Stats. at Large, 482; 5 U. S. Comp. Stats. 1916, sec. 4921 [43 U. S. C. A., sec. 934]), and declared that any railroad company desiring to secure the benefits of the Act should file within twelve months after the location of the road, in the local land office, a "profile of its road," which, upon approval by the secretary of the interior, shall "be noted upon the plats in said office." (Sec. 4924, Id. [43 U. S. C. A., sec. 937].)

Thus we have provision for what amounts to an offer by the government and an acceptance by the railroad company. (*Red River etc. Ry.* v. *Sture,* 32 Minn. 95, 20 N. W. 229.) The grant, however, is *in praesenti,* differing only from an absolute grant, in that the thing granted is indefinite, and the name of the grantee is unknown (*Denver & Rio Grande Ry. Co.* v. *Alling,* 99 U. S. 463, 25 L. Ed. 438; *Jamestown & Northern R. Co.* v. *Jones,* 177 U. S. 125, 44 L. Ed. 698, 20 Sup. Ct. Rep. 568), to which, on compliance with the requirements of the Act, the railroad company becomes a grantee as specifically

and definitely as if it had been named in the Act (*Oregon Short Line R. Co.* v. *Stalker,* 14 Idaho, 362, 94 Pac. 56; affirmed in *Stalker* v. *Oregon Short Line R. Co.,* 225 U. S. 142, 56 L. Ed. 1027, 32 Sup. Ct. Rep. 636).

3. The grant thus made and accepted has the effect of a patent to the land for the purpose named in the grant, and attaches, as of the date of the grant, to all lands which were "public," i. e., subject to sale or disposal by the government, and not either disposed of or appropriated by entry under the laws of the United States at the time of the filing of the map of definite location (*Oregon Trunk Line* v. *Deschutes R. Co.* (C. C. 1909), 172 Fed. 738; *St. Louis & S. F. R. Co.* v. *Budd,* 112 Ark. 105, 165 S. W. 265; *Enid & A. R. Co.* v. *Kephart,* 19 Okl. 1, 91 Pac. 1049; *Larson* v. *Oregon Ry. & Nav. Co.,* 19 Or. 240, 23 Pac. 974; *Newhall* v. *Sanger,* 92 U. S. 761, 23 L. Ed. 769; *Union Pac. Ry. Co.* v. *Harris,* 215 U. S. 386, 54 L. Ed. 246, 30 Sup. Ct. Rep. 138; *Minneapolis, St. P. & S. S. M. Ry. Co.* v. *Doughty,* 208 U. S. 251, 52 L. Ed. 474, 28 Sup. Ct. Rep. 291; *Pierce* v. *Chicago, M. & St. Paul Ry. Co.,* 52 Mont. 110, 156 Pac. 127), including mineral lands (*Wilkinson* v. *Northern Pac. R. R. Co.,* 5 Mont. 538, 6 Pac. 349; *Doran* v. *Central Pac. Ry. Co.,* 24 Cal. 245; *Bybee* v. *Oregon & C. R. Co.,* 139 U. S. 663, 35 L. Ed. 305, 11 Sup. Ct. Rep. 641).

4. Section 4 of the Act of 1875 (43 U. S. C. A., sec. 937; U. S. Comp. Stats., sec. 4924) provides that, after a right of way has attached, the lands over which it passes shall be disposed of "subject to such right of way." This provision clearly refers to that portion of a tract or legal subdivision lying outside the lines of the right of way. (*Rio Grande Ry. Co.* v. *Stringham,* 38 Utah, 113, 110 Pac. 868; affirmed 239 U. S. 44, 60 L. Ed. 136, 36 Sup. Ct. Rep. 5; *Northern Pac. Ry. Co.* v. *Ely,* 197 U. S. 1, 49 L. Ed. 640, 25 Sup. Ct. Rep. 302; *Northern Pac. Ry. Co.* v. *Townsend,* 190 U. S. 267, 47 L. Ed. 1044, 23 Sup. Ct. Rep. 671; *Northern Pac. Ry. Co.* v. *Smith,* 171 U. S. 260, 43 L. Ed. 157, 18 Sup. Ct. Rep. 794.) However, the right of way is granted on an implied condition of

reverter, in the event that the company ceases to use and retain the land for the purposes for which it was granted (*Rio Grande Ry. Co.* v. *Stringham,* above), and this reversionary interest may be granted to the person to whom the remainder of the land is patented (*Oregon Short Line R. Co.* v. *Stalker,* above).

It is therefore apparent that the predecessor of the defendant company acquired title to the right of way strip while the land was "public," and long prior to the entry thereon by the plaintiffs for the purpose of making their discovery, and that the defendant company duly succeeded to the rights of the grantee, while, as to the surface ground of their claim, at least, the plaintiffs could have acquired no more than a reversionary interest which would become effective only in the event the railroad company ceased to use the strip for the purposes for which it was granted.

5. Counsel for plaintiffs, however, contend that plaintiffs' **[3, 4]** patent granted an absolute fee to the surface ground on the claim, subject only to the right of way which gave to the railway company the right to use such ground "to the exclusion of everyone, providing the surface was used to facilitate the operations of, or was used for, railroad purposes." Counsel rely upon certain expressions found in the opinions in the *Townsend, Bybee, Stalker* and *Doran Cases,* cited above, and in *Smith* v. *Northern Pac. Ry. Co.,* 50 Mont. 539, 148 Pac. 393, hereinafter considered.

Having found that the use to which the surface ground of the Little Johnny lode was put was not a railroad purpose, and was not necessary to facilitate the operations of the railroad, the court adopted the theory of plaintiffs, and entered the judgment appealed from.

If the railroad company had been granted a mere easement over lands thereafter patented to an individual, such individual might acquire the right to use a portion of the right of way by showing that such portion was not used by, nor necessary for the use of, the railroad company.

6. However, this grant is more than an easement; it is a base, qualified or limited fee, and has the attributes of a fee, that is, perpetuity and exclusive use and possession (*Oregon Short Line R. Co. v. Stalker,* above; *Rio Grande Ry. Co. v. Stringham,* above; *Bybee v. Oregon & C. R. Co.,* above), and the grant itself is a *conclusive* legislative determination of the reasonable and necessary quantity of land to be dedicated to this public use, and carries with it the right to possession in the grantee and the use of the full width of the right of way thus granted, and the railroad company is not limited to so much thereof as it occupies or what is actually necessary for the use for which the grant was made (*Burton v. Laughrey,* 18 Mont. 43, 44 Pac. 406; *Southern Pac. Co. v. Burr,* 86 Cal. 279, 24 Pac. 1032; *Oregon Short Line R. Co. v. Quigley,* 10 Idaho, 770, 80 Pac. 401; *Smith v. Northern Pac. Ry. Co.,* above; *New Mexico v. United States Trust Co.,* 172 U. S. 186, 43 L. Ed. 413, 19 Sup. Ct. Rep. 881).

7. While expressions, such as, "the substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of a railroad," to be used "for the purposes contemplated by law," "limited to use and occupation for railroad purposes," are found in the opinions relied upon by plaintiffs, those expressions were used with reference to the use and occupation of the entire right of way strip in upholding the rights of the railroad company as announced above, and in holding that, under the law applicable to such situations, no right in any portion of the land within the right of way could be acquired by patent from the government, conveyance by the railroad company, or by alleged adverse possession by an individual while the railroad company maintained its railroad and operated trains thereon. Thus, in the *Townsend Case,* the sole question was as to whether a portion of the right of way could be acquired by patent or adverse possession, and, in declaring that it could not, the court said: "The land forming the right of way therein was taken out of the category of public lands subject to pre-emption and sale,

and the land department was therefore without authority to convey rights therein. It follows that the homesteaders acquired no interest in the land within the right of way because of the fact that the grant to them was of the full legal subdivisions.''

In *Northern Pac. Ry. Co.* v. *Townsend,* above, the court said that, as the necessity for the use of the full width of the right of way had been ''conclusively determined'' by Congress, ''neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad. * * * The whole of the granted right of way must be presumed to be necessary for the purposes of the railroad, as against a claim by an individual of an exclusive right to possession for private purposes.''

In the *Doran Case,* relied upon by counsel, it is said that it would be destructive of the rights of the railroad company if mining claims could at any time be located and worked upon the track and land covered by the right of way, and in *Wilkinson* v. *Northern Pac. Ry. Co.,* above, this court, after quoting from the *Doran Case,* said that the reservation of mineral lands from a land grant could not be extended to lands within the right of way grant, as ''the operations of mining and the business of railroads cannot be conducted at the same time upon the same ground, and a reservation of such character would beget a conflict of rights and a confusion of interests not in contemplation of intelligent legislative action.''

8. The findings of the trial court to the effect that the full width of the right of way was not necessary for railroad purposes was immaterial, and cannot support the judgment. (*Northern Pac. Ry. Co.* v. *Smith,* above.)

9. It is true the plaintiffs have paper title by patent from [5] the United States, but the defendant company also has title ''of an older date,'' and the inferior must yield to the superior. (*Wilkinson* v. *Northern Pac. Ry. Co.,* above; *Rio Grande Ry. Co.* v. *Stringham,* above.)

10. "The patent is not an adjudication concluding the paramount right of the company, but in so far as it included lands validly acquired theretofore, was in violation of law, and inoperative to pass title." (*Stalker* v. *Oregon Short Line R. Co.,* above.)

11. When, therefore, the plaintiffs entered upon the right of way in 1905, and sank their discovery shaft, the defendant company was in the exclusive possession of the land which was conclusively presumed to be necessary for railroad purposes, and the plaintiffs acquired no rights by their action. Their subsequently acquired patent could not pass title to the land, and thereby they acquired no rights in the surface ground at least.

When, therefore, the officers of the defendant company found the abandoned shaft upon the right of way, they were as much entitled to fill it in for any purpose as would be an individual finding a like depression in his town lot or on his agricultural land to which he held title in fee simple absolute.

For the reasons stated, the judgment is reversed and the cause remanded to the district court of Silver Bow county, with instruction to enter judgment in favor of the defendant.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.